Michael Scott MARTIN, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 66173, 66345.

Court of Criminal Appeals of Texas,
Panel No. 2.

Nov. 4, 1981.

Ted Redington, Dallas, on appeal only, for appellant.

Henry Wade, Dist. Atty., Gregory S. Long, Bradley K. Lollar and Stewart C. Robinson, Jr., Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, CLINTON and TEAGUE, JJ.

## OPINION

CLINTON, Judge.

These are two appeals which we will treat together: Cause No. 66,173 is from a revocation probation proceeding and Cause No. 66,345 is from a conviction for aggravated robbery. The causes are related in that papers and proceedings in the aggravated robbery trial before a jury were "judicially noticed" by the court below in revoking probation in the first cause—utilizing the rule judicially created by the *Barrientez-Bradley* line of cases[1]—and also because innovative appellate counsel now challenges the taking of "judicial notice" on a ground that he intertwines with some of the grounds of error in the appeal from the aggravated robbery conviction. Thus, he complains that appellant was not afforded effective assistance of counsel in the aggravated robbery trial and, therefore, the court erred in judicially noticing it to revoke probation. We take up that matter first, then other grounds of error in the second case and, ultimately, will affirm the judgments in both causes.

To be noted at the outset are germane common constituents in the trial and revocation proceeding, to-wit: the trial court, the trial judge, lead counsel for the State, defense attorneys—only the court reporters are different persons.[2] Thus, we need not grapple with the legal problems that have

---

1. *Barrientez v. State*, 500 S.W.2d 474 (Tex.Cr. App.1973); *Bradley v. State*, 564 S.W.2d 727 (Tex.Cr.App.1978). See also *McDonald v. State*, 608 S.W.2d 192 (Tex.Cr.App.1980) and *Bradley v. State*, 608 S.W.2d 652 (Tex.Cr.App. 1980)—"Bradley II." Followings of the rule have been characterized as "chickens coming home to roost," *Bradley v. State*, 564 S.W.2d at 733. The case at bar is another one in the chicken house.

2. Still, the record of the trial and the revocation proceeding are before us, and properly so, though the actual notes of the court reporter had not been transcribed before the judge took judicial notice of the evidence they would reveal. Of course, under the opinions in *Bradley's* case, supra, the lack of a statement of facts does not preclude noticing the evidence.

been troublesome in some of our causes, e. g., *Bradley* II.

Appellant, upon recommendation of a jury, had been granted probation by order of the court July 9, 1979. Adult Probation Officer Waylan Vernon was present at the time and discussed with appellant the terms and conditions of probation, including "Condition A"—that appellant "commit no offense against the laws of this . . . State . . ." Nine days thereafter Vernon filed a report of probation violation that appellant had violated Condition A in that on or about July 14, 1979, appellant had committed the offense of aggravated robbery in Dallas County. He testified there was no other reason for his making, filing and presenting the report. The formal motion to revoke filed by the prosecuting attorney alleges in terms only the same offense, as does the indictment returned contemporaneously with the motion.

Jury trial on the indictment commenced August 14, 1979 and concluded August 17, 1979; an amended motion for new trial was thereafter heard and overruled, and the trial court sentenced according to assessment of punishment at confinement for life. That done, the judge called up the State's motion to revoke, the reading was waived and, appellant having stood mute, the court entered a plea of not true. The court was requested by the prosecuting attorney, and responded that it would, take judicial notice of its official court records in the cause in which probation had been granted.[3] Next, the probation officer testified as indicated *ante*, and then came the matter of "judicial notice" which we set out in the margin.[4]

■ Appellant does not now fault his trial attorney for voicing, "No objection;" indeed, he acknowledges that "it is not improper to take judicial notice of previous proceedings to determine if probation should be revoked." Ordinarily, then, without a proper objection nothing would be presented for review. See, e. g., *Ex parte Bagley*, 509 S.W.2d 332 (Tex.Cr.App.1974); cf. Concurring Opinion in *O'Hern v. State*, 527 S.W.2d 568, 570 (Tex.Cr.App.1975). However, his novel contention is that such prior proceedings should not be thus utilized when representation by trial counsel during their course is ineffective. Appellant cites no authority to support the proposition.

■ For its part, the State asserts that flawed assistance of counsel "would not per se render all the evidence admitted in the aggravated robbery proceedings inadmissible . . . [in] . . . consideration for revocation," pointing to the lesser burden of proof in the latter proceeding.[5] Perhaps anticipating the position taken by the State, his

---

3. The prosecutor referred to the indictment, judgment, order of probation, copy of terms and conditions signed by appellant and the motion to revoke. Appellant did not then object, and does not now.

4. "THE COURT: Do you have any further evidence?
[PROSECUTOR]: Yes, sir, at this time we will ask the Court to take judicial notice of the testimony presented in court before you in Cause F–79–7098–HR, styled The State of Texas versus Michael Scott Martin and all the proceedings thereto.
THE COURT: Any objection?
[DEFENSE]: No objection.
THE COURT: I will take judicial notice of the evidence that was presented in the courtroom and the legal documents contained as records of the Court in Cause F–79–7098–HR styled The State of Texas versus Michael Scott Martin, being the aggravated robbery charge, first degree felony as charged in that indictment.

I will take notice that the jury did find Mr. Martin guilty of that offense and that they further assessed his sentence at life confinement in the Texas Department of Corrections and that he was sentenced to that term on the date of October 4, 1979, being today.
[PROSECUTOR]: The State rests.
THE COURT: What says the Defense, please?
[DEFENSE]: We have nothing to present, Your Honor."

5. In a probation revocation proceeding a preponderance of evidence standard is applied. It is met "when the greater weight of the credible evidence before the court creates a reasonable belief that a condition of probation has been violated as alleged." *Bradley* II, supra, at 656; *Kulhanek v. State*, 587 S.W.2d 424, 426 (Tex. Cr.App.1979); *Scamardo v. State*, 517 S.W.2d 293, 297 (Tex.Cr.App.1974).

first ground of error in our Cause No. 66,-345 is that the evidence is insufficient to support the judgment of conviction of aggravated robbery. Yet, that sufficient, unobjectionable, probative evidence before the jury later becomes available for consideration by the court in a probation revocation proceeding seems to be the teaching of both *Bradley* II and *McDonald,* supra, especially since the revocation hearing in each followed a trial in which the jury was unable to agree on a verdict. That is, the evidence did not convince beyond a reasonable doubt.

But, unless the body of evidence before the jury is so rife with mistakenly admitted testimony without objection from defense counsel, we fail to comprehend how the matter of assistance of counsel is implicated. See, e. g., *Ewing v. State,* 549 S.W.2d 392, 395 (Tex.Cr.App.1977); *Long v. State,* 502 S.W.2d 139, 141 (Tex.Cr.App. 1973) and related cases collected under *"Failure to Object to Incompetent Evidence,"* "Assistance of Counsel," 12 St. Mary's Law Journal 1, at 27–31, when on motion to revoke the court comes to consider whether what was before the jury amounts to a preponderance of the evidence that an offense was committed in violation of a condition of probation. Moreover, when the probationer continues to be represented by the same trial lawyer, as here, the likelihood making the court aware of a claim that the evidence being considered is somehow tainted by ineffectiveness of counsel is remote indeed. For, as appellant himself acknowledges, unrevealed "strategies of trial counsel may . . . explain actions or inactions," about which complaint

was never made to the court as the motion to revoke was being heard.[6] It is in these lights that we turn first to examine some of the evidence adduced and then to see if it is attenuated by the alleged failings of trial counsel.

The victim of the alleged robbery, a Garland service station attendant, testified to the facts of the offense committed by one brandishing and striking him with a handgun, whom he identified in court as appellant. The robber acquired keys to the victim's car and fled the scene; the automobile was soon abandoned near the Willows Apartments where appellant had previously resided. Appellant mounted a defense with fifteen witnesses, including himself. He denied committing aggravated robbery and presented alibi testimony to the effect that at the time he was at his residence at Lake Worth in Tarrant County with two housemates who confirmed that. On rebuttal, Garland Police Officer Dennis Wheatley, who coincidentally had investigated the earlier 1979 offense in our Cause No. 66,173 and knew appellant on sight, testified that about thirty minutes after the robbery he was on his way to the station house and saw appellant driving an automobile (which he would later see again parked next to the Lake Worth residence). At the station Wheatley heard of the robbery and a description of the suspect: he assembled a photographic array of pictures of five males, including appellant. The next day the victim recognized appellant and picked his picture from the array.

Appellant charges his trial counsel with five particularized failings,[7] but just two

6. Conceding that "an adequate review of this contention" may require "a more fully developed record," the appellate brief informs us that "at Appellant's insistence and for the purpose of avoiding any future claim of waiver, the ground of error is now presented for review."

7. First, counsel did not ventilate the photographic identification procedure through a pretrial hearing. Yet, appellant does not suggest *how* it might have been tainted; rather he believes such a hearing would provide "a preview of the testimony" and thus afford "a better

basis upon which to make strategic trial decisions."

Second, objection was not made when, in seeking to impeach appellant's credibility with evidence of the prior conviction of aggravated assault, the State went into details of the offense.

Third, counsel crossexamined Wheatley extensively about the photographic array he displayed to the robbery victim and thereby erroneously bolstered the identification testimony of the latter.

relate to the state of the evidence, and then only remotely: impeaching appellant with details of the prior offense and bolstering identification testimony.

█ On direct examination his attorney had brought out the facts that appellant had not denied committing the offense, but pleaded guilty to a jury that assessed punishment at four years, and recommended probation, and a fine; counsel then made the point through interrogation that appellant had pleaded not guilty to the aggravated robbery charge then on trial and promptly had him assert that he did not rob the service station attendant. The question by the prosecutor on crossexamination: "Tell the Jury what you did with an aggravated assault with a deadly weapon." The answer that follows consumes almost two full pages of the record, and then there was more colloquy about it—all without objection on the ground now advanced by appellant. Along the way appellant managed to reiterate that he had been convicted and "had every intention of living up to my probation." Patently, counsel for appellant had thought to gain some advantage from the stance of his client in the prior case and, having sought to do so, believed it would be considered bad form by the jury to keep the other side from going deeper into what he himself had started—his client was, in a phrase, "making a clean breast." There is no ineffectiveness in that; the risk that revelation of details of the prior offense might damage credibility was calculated, and we cannot find that the defensive theory and testimony were harmed by the exploration of details of the prior aggravated assault.[8]

As to the identification procedure, not only did counsel make no objection when the State briefly questioned the victim about his selecting appellant's picture, but also he interrogated at length about it. He brought out, among others weaknesses, that the victim first failed to identify *anyone* from the photographs, but after they were reshuffled a selection was made. His cross-examination of Wheatley was also detailed in this respect, and it was counsel for appellant who in front of the jury obtained from Wheatley the five photographs, had him identify them and offered them in evidence. All this was no doubt to permit counsel to argue, as he did, that Officer Wheatley was more interested in getting a quick identification to confirm his suspicion the appellant committed the offense than he was in making an investigation "to solve the robbery." While the State might have been barred by a bolstering objection from questioning Wheatley in that manner, *Jackson v. State*, 507 S.W.2d 231 (Tex.Cr.App.1974), that rule does not impede a criminal trial lawyer in determinedly pursuing a defensive theory of mistaken identification.[9] Ineffectiveness is not shown when the tactic is unsuccessful.

For those reasons we find there are no failings of counsel to attenuate the evidence adduced by the State. That being the only challenge to sufficiency in the revocation case, accordingly, the sole ground of error in Cause No. 66,173 is overruled.

Fourth, no evidence was presented in behalf of appellant on punishment. True, but like evidence had been adduced at the first stage.

Fifth, counsel waived argument at the end of the hearing on punishment. As we shall demonstrate *post*, the waiver was clearly a conscious tactic to shutdown more argument by the State.

Among many others, *Long v. State*, 502 S.W.2d 139 (Tex.Cr.App.1973) is a case adverse to appellant's first contention and generally against the others when, as we will later find, strategical and tactical considerations are guiding the acts of trial counsel.

It must be remembered that while a trial lawyer must make such decisions, "the merits of the decision are not altogether capable of ascertainment merely by consulting the outcome," *Williams v. Beto*, 354 F.2d 698, 705–706 (CA5 1965).

8. Indeed, the State seems to have accepted appellant's account of the facts surrounding the assault and argued from it that "he is the type of person who gets irrationally mad," rather than being unworthy of belief.

9. Counsel argued, "It could be a mistake thinking the man did it. It could be a mistaken identification for reasons we will never know. Remember the boy saying how he looked at the pictures..."

As already indicated, the first ground of error in Cause No. 66,345 is that the evidence is insufficient to support the judgment of conviction for the offense of aggravated robbery. We do not agree.

■■■ In his brief appellant urges the Court to reevaluate our standard for review in light of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and submits that any rational trier of the fact would have a reasonable doubt as to his guilt, primarily because of the acknowledged unreliability of eyewitness testimony and the wealth of unimpeached alibi evidence. But under either standard a court reviewing "a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution," *Jackson v. Virginia*, supra, 443 U.S. at 326, 99 S.Ct. at 2793. Thus, the jury obviously did not, and the court was not obliged to, believe the defensive alibi testimony. The first ground of error in Cause No. 66,345 is overruled.

■ The second ground of error complains that the judgment is invalid because the jury heard details of the prior aggravated assault offense, the fact of the commission of which was admissible for the limited purpose of impeachment. But, as appellant has complained, his trial attorney made no objection to his own extended recitation of the details nor to the further explanatory colloquy that followed; and, as we have mentioned *ante*, the failure to object seems to have been an effort at advantage-taking. The ground is without merit.

■ The third ground assigns error when the trial court did not communicate with the jury in open court in response to a note it sent out, and appellant did not waive the omission. See Article 36.27, V.A.C.C.P.[10] The mild contretemps arises from the quite ordinary request from the jury foreman that items of evidence be delivered to the jury for consideration during deliberation on guilt. After arguments were completed the judge routinely informed the jury to take the charge and once in the jury room to elect a foreman and then stated:

"Then if you would like *the evidence in the case*, if you will send out a note in writing, signed by the foreman, I'll have that evidence brought into you by the bailiff." [Emphasis added]

Sure enough, just as they had been told to do, the jurors sent out a "note." It is a list of six items: the first is "Officer Wheatley's testimony;" the other five are exhibits admitted in evidence. In the presence of appellant and all counsel, according to the transcription of notes of the court reporter, the court alluded to the note and then asked "both sides" if it were agreeable to send back the items of tangible evidence listed on the note and, also, "send back my answer in writing indicating to them how they need to ask for any testimony, if they want such testimony, the requirements necessary for them to obtain any testimony." The response from both counsel was "No objection." Appellant was not addressed, nor did he utter any position.

Appellant contends error was committed, quoting a portion of *Allaben v. State*, 418 S.W.2d 517, 520 (Tex.Cr.App.1967). We do not reach the law for, though the judge gained the agreement of counsel to send back to the jury room an answer in writing, we cannot find in and appellant does not cite a place in the record where such a written answer appears. Nothing is presented for review.

■ At the close of the punishment hearing one assistant district attorney argued, appellant's attorney waived argument and, over his objection, the second assistant district attorney was permitted to make what the statute calls "the concluding address," Article 36.07, V.A.C.C.P. *James v. State*,

10. Article 36.27, supra, provides how a trial court must deal with a written communication relative to the case from the jury; as pertinent here, it requires that any written instruction or answer "shall be read in open court *unless expressly waived by the defendant*." [Emphasis added]

563 S.W.2d 599, 603 (Tex.Cr.App.1978) is against appellant's contention that there was error in that. The fourth ground of error is overruled.

Ground of Error No. 5 asserts that the judgment is invalid because appellant did not receive effective assistance of counsel. The failings assailed under this ground are the same one pointed out in the sole ground of error in the first cause. For the same reasons set out in rejecting that ground of error, we also overrule this last ground of error.

The order revoking probation and imposing sentence in Cause No. 66,173 is affirmed.

The judgment of conviction in Cause No. 66,345 is affirmed.

TEAGUE, J., not participating.