**Robert Hugh STERLING, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–86–012–CR.**

Court of Appeals of Texas,
Fort Worth.

Oct. 9, 1986.

---

Merkle & Cannedy and Marty Cannedy, Wichita Falls, for appellant.

James A. Rasmussen, Asst. Crim. Dist. Atty., and Ed Lane, Asst. Crim. Dist. Atty., Wichita Falls, for State.

Before FENDER, C.J., and BURDOCK and HILL, JJ.

OPINION

HILL, Justice.

Robert Hugh Sterling appeals from the revocation of his probation, following his plea of untrue to the State's motion to revoke his probation. The motion to revoke probation alleged sixteen separate instances of making repeated telephone calls to four different individuals in a manner reasonably likely to harass, annoy, embarrass, and offend them. *See* TEX.PENAL CODE ANN. sec. 42.07(a)(4) (Vernon Supp. 1986). The judge found all of the alleged violations to be true as to three individuals, but made no finding with respect to an alleged violation regarding a fourth victim. Sterling's sole point of error is that the trial court abused its discretion by revoking his probation because the evidence is insufficient to support the trial court's findings that he committed an offense against the laws of the State of Texas.

We affirm, because we find that the trial court did not abuse its discretion since the evidence was sufficient to establish that Sterling committed an offense against the laws of the State of Texas, as alleged in the motion to revoke probation.

The burden of proof in a revocation proceeding is by a preponderance of the evidence. *Martin v. State*, 623 S.W.2d 391, 393 (Tex.Crim.App.1981). Where the sufficiency of the evidence to support the trial court's order is challenged, the evidence is viewed in a light most favorable to the trial court's findings. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex.Crim.App.1981). The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Naquin v. State*, 607 S.W.2d 583, 586 (Tex.Crim.App.1980).

Appellate review of an order revoking probation is limited to a determination of whether the trial court abused its discretion. *Barnett v. State*, 615 S.W.2d 220, 222 (Tex.Crim.App.), *appeal dismissed*, 454 U.S. 806, 102 S.Ct. 79, 70 L.Ed.2d 75 (1981). Where the State has failed to meet its

burden of proof, the trial court abuses its discretion in issuing an order to revoke probation. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex.Crim.App.1984).

Proof by a preponderance of the evidence of any *one* of the alleged violations of the conditions of probation is sufficient to support the order of revocation. *Sanchez v. State*, 603 S.W.2d 869, 871 (Tex.Crim.App. 1980); *Moses v. State*, 590 S.W.2d 469, 470 (Tex.Crim.App.1979).

Sterling was placed on shock probation on December 6, 1982 (*see* TEX.CODE CRIM.PROC.ANN. art. 42.12, sec. 3e (Vernon Supp.1986)) following a six-year sentence for the rape of a child. *See* Act of June 19, 1975, ch. 342, sec. 8, 1975 Tex.Gen. Laws 912, 914, *repealed by* Act of June 19, 1983, ch. 977, sec. 12, 1983 Tex.Gen.Laws 5311, 5321. One of the conditions of his probation was that he not commit an offense against the penal laws of this state. The first violation alleged in the motion to revoke probation was that Sterling:

A. Committed an offense against the laws of the State of Texas in that on or about the [sic] November 2, 1984, in the County of Wichita and State of Texas, the defendant, with intent to harass, annoy, alarm, abuse, torment and embarrass M____ R____, did then and there cause the telephone of M____ R____ to ring repeatedly and make repeated telephone communications anonymously to M____ R____, and make repeated telephone communications in a manner reasonably likely to harass, annoy, embarrass, and offend the said M____ R____.

The remaining paragraphs contained the same language, except for the date and the name of the injured party. They contained the following dates and injured parties:

M____ R____—April 28, 1985, May 10, 1985, May 12, 1985;

S____ N____—June 17, 1985, June 18, 1985, June 20, 1985, June 30, 1985, July 1, 1985, July 15, 1985, July 17, 1985; and

J____ S____—April 29, 1985, July 3, 1985, July 5, 1985, July 7, 1985, July 9, 1985.

Each of the three injured parties testified to the calls which she had received. J____ S____ testified that she had received twelve telephone calls before May 1, 1985, the approximate date she notified the telephone company. She said that the caller would start off by asking, "what are you doing?" The caller told her his name was Charles Manson and that he wanted to come over. She said that sometimes the caller became sexually obscene. She recalled that she felt threatened and scared by the calls. She had no social or business dealings with Sterling and did not know him. She identified Sterling's voice at trial as the voice of the caller.

M____ R____ first requested a trace on her telephone on March 26, 1985. She testified that she was getting telephone calls and no one would answer. She said that when she hung up they would call right back and keep calling back. She said that sometimes she would receive calls where she would hear a sound like a computer voice saying the two letters "H", "I". She stated that the calls came at all hours of the day and night, and that when she heard a voice, the person asked to speak to her son. When she would say, "my son's not home, what's your name?", the caller would answer, "my name is Terry." Another time the caller identified himself as Charles Manson. She said that the calls were enough to "drive you nuts." She further testified that she became familiar with the voice, and she identified Sterling's voice at trial as the voice of the person who called her. M____ R____ said that Sterling was acquainted with her son and that she knew him previously.

S____ N____ testified that she was receiving repeated telephone calls all hours of the day and night, sometimes numerous times in one day. She requested a trace sometime in June, 1985. She said that the caller would awaken her from a sound sleep, and that he would talk as long as she would talk. She related one lengthy conversation she had with the caller. She said that one Saturday he called eight to ten times. She stated that many times he said,

"what are you doing?", and that she was very afraid and annoyed. S____ N____ also at trial identified the caller's voice as that of Sterling. She further said that sometimes he would say, "this is Charlie," and when she would say "Charlie who?", he would say "Charlie Manson." Finally, when she questioned him about that name he told her his name was Robert Sterling. She had not known Sterling previously.

All three victims testified that they contacted the telephone company after receiving numerous calls. Witnesses from the telephone company testified that they put a line identification trace on the phones of the victims. The line identification records which were introduced into evidence showed a record of the calls made during the time periods which the victims had reported to them as the time during which they were receiving the harassment calls. These records established that someone calling from the residence where Sterling lived with his mother had called all three of the victims, often late at night, and on one occasion, May 10, 1985, the record showed that four calls were placed from that number to the number of M____ R____ between 11:32 and 11:41 p.m.

We find that the evidence is sufficient to show that Sterling made repetitious phone calls to the residence of M____ R____ on May 10, 1985, with the intent to harass and annoy M____ R____, all as alleged in the motion to revoke probation. Since the proof of at least one of the alleged violations of the conditions of probation was shown, we find the evidence sufficient to support the order of revocation. *See Sanchez,* 603 S.W.2d at 871.

M____ R____ could not recall if she had received any calls on May 10, 1985. Like most of the witnesses, she appeared to be relying on the telephone company to keep a record for her of the calls, since she was supposed to call them every time she received a harassment call. From her testimony, Sterling concludes that there is no evidence to show that she received any repeated telephone calls on that date. We do not agree with Sterling's conclusion. The evidence may be insufficient to show that M____ R____ received any *completed* telephone calls on that date, but the record is sufficient to show that Sterling, with the intent to harass or annoy, caused her telephone to ring repeatedly May 10, 1985. Sterling's conduct is sufficient to constitute a violation of TEX.PENAL CODE ANN. sec. 42.07(a)(4), because the statute does not require that a call be completed. A repetitious ringing of the victim's telephone with the intent to harass or annoy is sufficient to establish a violation of that section.

Sterling relies on the cases of *Wolfe v. State,* 620 S.W.2d 602 (Tex.Crim.App.1981) and *Steinhauser v. State,* 577 S.W.2d 257 (Tex.Crim.App.1979) to support his position that the evidence is insufficient. In *Steinhauser,* no voice was ever heard by the complainant. Other persons besides the defendant, Steinhauser, lived at the residence from which the calls were being made. Similarly, in *Wolfe,* anonymous calls were coming from the residence of the defendant, Wolfe, but no other evidence connected the defendant to the calls. In the case at bar, we find that the identification of Sterling by all three victims as the person who was making all those calls to them constitutes enough additional evidence to make the evidence sufficient to support the revocation of probation.

We overrule Sterling's sole point of error.

We affirm the revocation of probation.