In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00190-CR

                                                ______________________________

 

 

                                ZACKERY DALE LUCKETT,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                      On Appeal from the 102nd
Judicial District Court

                                                          Red
River County, Texas

                                                          Trial Court
No. CR00744

 

                                                    
                                              

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            After
Zackery Dale Luckett entered into a plea bargain agreement, on January 3, 2008,
he pled guilty to two counts of aggravated sexual assault of a child[1]
and the trial court deferred adjudication of guilt, placing him on community
supervision for a period of ten years. 
On June 26, 2009, the State filed a motion to revoke Luckett’s
community supervision, adjudicate guilt of the sexual assault offenses, and
proceed with sentencing, alleging that Luckett had violated his community
supervision by forging a check.  The
trial court then adjudicated Luckett’s guilt and sentenced Luckett to twenty
years’ imprisonment in the Texas Department of Criminal Justice–Institutional
Division on each count, the sentences to run concurrently.  

            Luckett
appeals the trial court’s judgment on the sole ground that the evidence
presented at the revocation hearing was insufficient to establish he “was the
person responsible for actually filling out the check.”  Although Luckett admits to having passed the
check that was the basis of the claims against him, he maintains that he did
not intend to commit fraud.  Because we
find the evidence sufficient by a preponderance of the evidence to establish
that Luckett possessed a forged check with intent to pass it, we affirm the
trial court’s judgment. 

I.          Standard of Review 

            We review a decision to
adjudicate guilt “in the same manner” as we review a decision to revoke
community supervision.[2]  Tex.
Code Crim. Proc. Ann. art. 42.12, § 5(b) (Vernon Supp. 2009).  While the decision to revoke community
supervision rests within the discretion of the trial court, that discretion is
not absolute.  In re T.R.S., 115 S.W.3d 318, 320 (Tex. App.—Texarkana 2003, no
pet.).  To revoke community supervision,
the State must prove by a preponderance of the evidence every element of at
least one ground for revocation.  Tex. Code Crim. Proc. Ann. art. 42.12,
§ 11 (Vernon Supp. 2009); T.R.S., 115
S.W.3d at 320; Johnson v. State, 943
S.W.2d 83, 85 (Tex. App.––Houston [1st Dist.] 1997, no pet.).  “‘Preponderance of the evidence’ has been
defined as the greater weight and degree of credible testimony.”  T.R.S.,
115 S.W.3d at 320.  In other words, if
the greater weight of credible evidence in this case created a reasonable
belief that Luckett violated a condition of his community supervision, the
standard was met.  Id. at 321 (citing Martin v.
State, 623 S.W.2d 391, 393 n.5 (Tex. Crim. App. [Panel Op.] 1981)).  

            In
a revocation hearing, the trial court is the sole trier of the facts and
determines the credibility of the witnesses and the weight to be given to the
testimony.  Id. at 321; Lee v. State,
952 S.W.2d 894, 897 (Tex. App.—Dallas 1997, no pet.); Johnson, 943 S.W.2d at 85. 
The judge may accept or reject any or all of a witness’s testimony.  T.R.S.,
115 S.W.3d at 321 (citing Mattias v.
State, 731 S.W.2d 936, 940 (Tex. Crim. App. 1987)).

            Considering
the unique nature of a revocation hearing and the trial court’s broad
discretion in the proceedings, the general standards for reviewing factual
sufficiency do not apply.  Pierce v. State, 113 S.W.3d 431, 436
(Tex. App.—Texarkana 2003, pet. ref’d). 
Instead, we review the trial court’s decision regarding community
supervision revocation for an abuse of discretion and examine the evidence in a
light most favorable to the trial court’s order.  T.R.S.,
115 S.W.3d at 321; Pierce, 113 S.W.3d
at 436 (citing Garrett v. State, 619
S.W.2d 172, 174 (Tex. Crim. App. 1981)). 
Thus, if the greater weight of credible evidence creates a reasonable
belief a defendant has violated a condition, the trial court’s order of
revocation was not an abuse of discretion and must be upheld.  Pierce,
113 S.W.3d at 436 (citing Scamardo v.
State, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974)).  

II.        Sufficient Evidence
Established Violation of Terms of Community Supervision 

            The
State’s first witness at the revocation hearing was Cecil Iglehart.  She testified her checkbook was taken from
her purse in the bedroom after Luckett and his girlfriend, Stephanie Cockraham,[3]
came to her home with her granddaughter and grandson, Stephanie and Trae.[4]  Her bank statement revealed that a $5,000.00
check had been forged by someone who had misspelled her first name (spelling it
“Cecile”).  The payee and endorser of
this check was Zack Luckett for a “Vecicle.” 
Upon discovery of the check in her bank statement, Iglehart went
personally to the bank upon which the check was drawn.  While there, Iglehart was shown a video of
the person who cashed the check, and Iglehart identified the person as Luckett.
 Wendy Knight acknowledged that she had
been the bank teller who had honoured the check after having had Luckett (whom
she recognized in court and identified) produce a driver’s license and writing
the license number on the check.  The
bank produced a video recording of Luckett during the transaction at the bank. 

            Luckett
attempted to divert the focus onto Stephanie as a potential perpetrator of the
crime.  During Iglehart’s cross-examination,
Luckett confronted Iglehart with an out-of-court statement made by Trae.  In that statement, Trae alleged that
Stephanie took the check, delivered it to Luckett, and waited at the bank while
Luckett cashed it. The statement went on to say that when Luckett returned from
inside the bank, he gave Stephanie what appeared to be $1,500.00 cash, some of
which she shared with Trae, but she instructed Trae to say that the money came
from someone else.  Iglehart also
testified Stephanie was on community supervision for a forgery offense that she
had committed in Oklahoma.  

            However,
the totality of the evidence established that if Stephanie was involved, it was
in conspiracy with Luckett and Cockraham. 
Investigator James Mazy described an encounter with Luckett, during
which he “wanted to come and basically tell his side of the story.”  Luckett’s story to Mazy began with Stephanie’s
alleged statement that she lost $5,000.00 in Idabel, Oklahoma, “on some type of
car deal.”  She planned on satisfying her
debt by obtaining a loan from her grandmother. 
Since Stephanie did not have her driver’s license, she asked Luckett to
cash the check for her and gave him $500.00 from the proceeds as a check
cashing fee.  After obtaining “different
stories” from Cockraham, and denials from each of them that either of them had
been to Iglehart’s residence, Mazy concluded their version of events had “no
basis of validity.”  Mazy also stated
that his review of the bank video recording revealed that Luckett had tried to
hide his face when he realized that a camera was recording him.  

            After
Luckett and Cockraham were interviewed, Mazy instructed them to each write
three sample checks.  Luckett introduced
the handwriting samples during Mazy’s cross-examination.  Mazy admitted that because Cockraham’s
handwriting was similar to that on the forgery and because it had the same
misspelling of Iglehart’s name, it was possible that Cockraham had signed the
forged check.  

            Finally,
Cockraham took the stand and claimed Stephanie said “she was being
reimbursed for a $5,000.00 check that had been stolen from her.  Her grandmother was reimbursing her.”  There was no mention of a “car deal,” which
Luckett used to explain the term “Vecicle” contained on the memo line of the
forged check.  Luckett also obtained
money from the cashed check. 

            Forgery
has several meanings, one of which is “to possess a writing that is forged . . .
with intent to utter” or pass it.  Tex. Penal Code Ann. § 32.21(a)(1)(C)
(Vernon Supp. 2009). Here, Iglehart did not
authorize the execution of the check. 
The fact that the check was executed by someone else was
uncontested.  Luckett possessed the
forged check with intention to pass it and obtain $5,000.00 cash.  The question becomes whether he possessed the
requisite intent to defraud or harm Iglehart. 
Tex. Penal Code Ann. §
32.21(b) (Vernon Supp. 2009).  

            Iglehart
claimed that Luckett and Cockraham came to her home and it was at that time
that her checkbook was stolen, a fact both denied vehemently.  Since the trial court was the sole trier of
the facts and credibility, it was free to believe Iglehart, who identified the
couple from a video recording at the bank and from a photographic lineup.  T.R.S., 115 S.W.3d at 321; Johnson,
943 S.W.2d at 85.  Mazy described
inconsistencies in the stories told to him by Luckett and Cockraham, further
evidencing guilt on their part. 
Cockraham’s handwriting was similar to the writing on the forged check
and contained the same misspelling of Iglehart’s name.  The main defense theory was that Stephanie,
who was not located, was the person who actually forged the check.  The court was free to disbelieve that
Iglehart’s own granddaughter would misspell her name.  Taking into consideration that Luckett,
Cockraham, and Stephanie all received sums from the forged check, Trae’s
statement suggested that the trio conspired together to defraud Iglehart.  This evidence, coupled with observation of
bank video recordings and Mazy’s testimony that Luckett attempted to hide his
face after realizing he was being filmed, could have led the trial court to
conclude by a preponderance of the evidence that Luckett possessed the
requisite intent to defraud. 

            Thus,
since the greater weight of credible evidence reviewed in a light most
favorable to the ruling created a reasonable belief Luckett violated a
condition of his community supervision, we cannot conclude the trial court
abused its discretion in proceeding to adjudication of guilt and sentencing.  Pierce,
113 S.W.3d at 436 (citing Scamardo,
517 S.W.2d at 298).  

III.       Conclusion 

            We
affirm the judgment of the trial court.  

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date
Submitted:          March 11, 2010

Date
Decided:             March 12, 2010

 

Do Not
Publish











[1]Luckett
appeals from judgments entered in this cause and in cause number
06-09-00191-CR.  





[2]Thus,
all standards will be discussed in terms of revocation of community supervision.





[3]To
avoid confusion, further reference to Luckett’s girlfriend will be as
“Cockraham” and references to Iglehart’s grandchildren, Stephanie Iglehart and
Trae Iglehart, will be by their first names.

 





[4]Iglehart
identified Luckett from the bank video recording and picked Cockraham out of a
photographic lineup as being the individuals who had visited her residence.