

**In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana**

_____

No. 06-10-00032-CR

_____

HOI THANH DUONG, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
Bowie County, Texas
Trial Court No. 09M1532-CCL

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Pursuant to a plea, Hoi Thanh Duong was found guilty of assault causing bodily injury—family violence to Linda Dorland. The court suspended a sentence of 365 days in jail and placed him on community supervision for a period of eighteen months.[1] Duong was ordered to pay a $15.00 Crime Stopper fee, a $60.00 per month supervision fee, and an unspecified random alcohol and drug testing (RAD) fee. After finding that Duong had committed criminal trespass and had failed to pay these fees, the trial court revoked his community supervision. On appeal, Duong challenges the legal and factual sufficiency of the evidence supporting the trial court's decision of revocation. We reverse the trial court's judgment.

A decision to revoke community supervision rests within the discretion of the trial court, but it is not absolute. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *In re T.R.S.*, 115 S.W.3d 318, 320 (Tex. App.—Texarkana 2003, no pet.). To revoke community supervision, the State must prove every element of at least one ground for revocation by a preponderance of the evidence. *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993); *T.R.S.*, 115 S.W.3d at 320. "'Preponderance of the evidence' has been defined as the greater weight and degree of credible testimony." *T.R.S.*, 115 S.W.3d at 320. If the greater weight of credible evidence in this case created a reasonable belief that Duong violated a condition of community supervision, the standard was met. *Id*. at 321 (citing *Martin v. State*, 623 S.W.2d 391, 393 n.5 (Tex. Crim. App. [Panel Op.] 1981)).

---

[1]Duong was also ordered to pay a $1,000.00 fine and $223.00 in court costs.

In a revocation hearing, the trial judge is the sole trier of the facts and determines the credibility of the witnesses and the weight to be given to the testimony. *Id.*; *Lee v. State*, 952 S.W.2d 894, 897 (Tex. App.—Dallas 1997, no pet.); *Johnson v. State*, 943 S.W.2d 83, 85 (Tex. App.—Houston [1st Dist.] 1997, no pet.). The judge may accept or reject any or all of a witness' testimony. *T.R.S.*, 115 S.W.3d at 321 (citing *Mattias v. State*, 731 S.W.2d 936, 940 (Tex. Crim. App. 1987)). Considering the unique nature of a revocation hearing and the trial court's broad discretion in the proceedings, the general standards for reviewing factual sufficiency do not apply. *Pierce v. State*, 113 S.W.3d 431, 436 (Tex. App.—Texarkana 2003, pet. ref'd). Instead, we review the trial court's decision regarding community supervision revocation for an abuse of discretion and examine the evidence in a light most favorable to the trial court's order. *T.R.S.*, 115 S.W.3d at 321; *Pierce*, 113 S.W.3d at 436 (citing *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981)). Thus, if the greater weight of credible evidence creates a reasonable belief a defendant has violated a condition of his or her community supervision, the trial court's order of revocation must be upheld. *Rickels*, 202 S.W.3d at 763–64; *Pierce*, 113 S.W.3d at 436. If the State's proof is sufficient to prove any one of the alleged community supervision violations, the revocation should be affirmed. *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980); *T.R.S.*, 115 S.W.3d at 321.

In this case, the State alleged Duong committed the offense of criminal trespass, and failed to pay the Crime Stopper, supervision, and RAD testing fees in a timely manner. We address the

payment or nonpayment of fees first.

Carol Castillo, Duong's community supervision officer, stated that Duong had complied with all of the terms and conditions of his community supervision other than receiving the criminal trespass charge. Castillo specified Duong had paid all of his fees and was "current."[2] No contrary evidence was presented, and the State did not argue alleged nonpayment of fees to the trial court during closing argument. We find that the State failed to prove by a preponderance of the evidence that Duong violated the terms of his community supervision by failing to pay fees.

Next, we review the evidence demonstrating criminal trespass.[3] Dorland was an employee of a nail salon and an employer of a Vietnamese restaurant. Duong worked at the salon and restaurant with Dorland. Her employees, including Duong, lived at her residence. At the time, Duong was on community supervision for an assault against Dorland. Dorland had banned Duong from her house, but she lifted the ban and let him come back because he had no other place to live and he promised to never do "anything wrong no more." An unnamed employee, who knew Duong was on community supervision, attempted to get him in trouble by telling Dorland he had made a scene at the nail salon and cursed at the employer. Dorland became afraid that Duong was "bad again." Duong went to Dorland's house on the night in question. Although Duong

---

[2]Castillo testified, "He has been delinquent, but maybe like $65, but it's–the way the computer shows it, at the first of the month it shows that he's delinquent for that month, but they have that month to pay the balance." We interpret this testimony to mean that Duong was not delinquent, but the computer showed that a $65.00 balance was due at the end of the month.

[3]The offense of criminal trespass is committed if the person "enters or remains on or in property of another . . . without effective consent and the person (1) had notice that the entry was forbidden; or (2) received notice to depart but failed to do so." TEX. PENAL CODE ANN. § 30.05(a)(1), (2) (Vernon Supp. 2010).

4

lived at the residence, he did not have a key, and Dorland did not open the front door based upon the other employee's "lie." Duong knocked on Dorland's window and wanted to talk to her, but Dorland did not want to speak to him "because I'm afraid he's drinking beer." "I scared and I call the police." She would have let him in if she had known the other employee lied. She further stated that she wished she had not called the police because "he did not do anything wrong." Dorland's cross-examination produced the following statements made to the investigating officer:

> Q. Do you remember telling the police that he came to your house and beat on the back door?
>
> A. Yeah.
>
> Q. Do you remember telling the police that he began to yell mean words at you?
>
> A. He yell at me.
>
> Q. He yelled mean words at you?
>
> A. Yeah, he did on the outside.
>
> Q. And then you said that you did not let Hoi in, right?
>
> A. Yeah. I said that in the room. I say I don't want to let him in. But I don't know he --

Duong opened the window, and eventually found his way inside the garage. Officer Jonathan Price reported that Dorland called and said "that the trespasser was in the house now [and] she didn't know how he got in." The front door was locked when Price arrived at the scene and "there was . . . an open window with the screen broken." Price found Duong inside the garage drinking

5

a beer. He was detained while Price confirmed that a ban had previously been issued against Duong for that residence.[4] Dorland told Price she had not opened the door because she was scared of Duong. This statement was made prior to her knowledge of the other employee's lie designed to get Duong in trouble. When asked if she told Duong to leave, Dorland said, "I don't see him. I just call."

Duong testified that he had been given permission to live at Dorland's house. He denied knowledge of a current ban on the residence, but later testified, "[S]he put the ban on me, but I feel that she doesn't know . . . how to . . . lift the ban up." Duong works for Dorland as manager of a Vietnamese restaurant. He did have an altercation with another employee, but he had no idea when he went to the home that night that Dorland did not want him there. Duong said he went into the residence because he kept calling, but Dorland did not answer, and knew he had to stay home because he was on community supervision. He thought "nobody [was] in the house."

The elements of criminal trespass applicable to this case are that: (1) a person, (2) intentionally or knowingly, (3) enters or remains on or in property of another, (4) without the effective consent of the owner, (5) having notice that entry was forbidden or received notice to depart but failed to do so. TEX. PENAL CODE ANN. § 30.05(a). The dispute concerns only whether Duong had notice that entry was forbidden or received notice to depart and failed to do so.

---

[4]Dorland claimed that the ban was for the nail salon, but Duong acknowledged that the ban was for the residence. In either event, Dorland believed she had lifted the ban.

6

The evidence shows that at one time, Duong had been banned from Dorland's home, but both Dorland and Duong testified that she had allowed him to come back and reside at her home. The fact that Dorland gave Duong permission to live at her home does not support a finding that Duong had notice that entry was forbidden; in fact, it would support the contrary conclusion, and Dorland testified that she had lifted the ban.

The other issue is whether Duong received notice to depart the premises and failed to do so. The testimony from the two parties was that Duong came to the door, had no key, knocked on the door, and Dorland, having heard a tale about Duong's confrontation with another employee, was afraid and did not want Duong there. But the important legal issue is whether Duong received notice to depart; we find no evidence that Dorland ever told Duong to leave or in any manner gave him notice to depart. The testimony showed she did not want him there, was afraid he was drinking beer, and she called the police. When asked directly if she had told Duong to leave her answer was, "I don't see him. I just call." The evidence is insufficient to prove Duong committed the offense of criminal trespass.

After reviewing the evidence in a light most favorable to the trial court's order, we conclude that the State failed to prove that the greater weight of credible evidence created a reasonable belief that Duong violated a condition of his community supervision. The order

7

revoking Duong's community supervision is reversed, judgment is rendered continuing Duong on community supervision, and Duong is ordered discharged.

Jack Carter
Justice

Date Submitted: August 17, 2010
Date Decided: September 16, 2010

Do Not Publish