In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00032-CR

                                                ______________________________

 

 

                                      HOI THANH DUONG,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                            On Appeal from the County Court at Law

                                                             Bowie County, Texas

                                                     Trial Court No. 09M1532-CCL

 

                                                              
                                    

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                      MEMORANDUM OPINION

 

            Pursuant to
a plea, Hoi Thanh Duong was found guilty of assault causing bodily injury—family
violence to Linda Dorland.  The court
suspended a sentence of 365 days in jail and placed him on community
supervision for a period of eighteen months.[1]  Duong was ordered to pay a $15.00 Crime Stopper
fee, a $60.00 per month supervision fee, and an unspecified random alcohol and
drug testing (RAD) fee.  After finding
that Duong had committed criminal trespass and had failed to pay these fees,
the trial court revoked his community supervision.  On appeal, Duong challenges the legal and
factual sufficiency of the evidence supporting the trial court’s decision of
revocation.  We reverse the trial court’s
judgment. 

            A decision
to revoke community supervision rests within the discretion of the trial court,
but it is not absolute.  Rickels v. State, 202 S.W.3d 759, 763 (Tex.
Crim. App. 2006); In re T.R.S., 115
S.W.3d 318, 320 (Tex. App.—Texarkana 2003, no pet.).  To revoke community supervision, the State
must prove every element of at least one ground for revocation by a
preponderance of the evidence.  Cobb v. State, 851 S.W.2d 871, 873 (Tex.
Crim. App. 1993); T.R.S., 115 S.W.3d
at 320.  “‘Preponderance of the evidence’
has been defined as the greater weight and degree of credible testimony.”  T.R.S.,
115 S.W.3d at 320.  If the greater weight
of credible evidence in this case created a reasonable belief that Duong
violated a condition of community supervision, the standard was met.  Id.
at 321 (citing Martin v. State, 623
S.W.2d 391, 393 n.5 (Tex. Crim. App. [Panel Op.] 1981)).

            In a
revocation hearing, the trial judge is the sole trier of the facts and
determines the credibility of the witnesses and the weight to be given to the
testimony.  Id.; Lee v. State, 952
S.W.2d 894, 897 (Tex. App.—Dallas 1997, no pet.); Johnson v. State, 943 S.W.2d 83, 85 (Tex. App.—Houston [1st Dist.]
1997, no pet.).  The judge may accept or
reject any or all of a witness’ testimony. 
T.R.S., 115 S.W.3d at 321
(citing Mattias v. State, 731 S.W.2d
936, 940 (Tex. Crim. App. 1987)).  Considering
the unique nature of a revocation hearing and the trial court’s broad
discretion in the proceedings, the general standards for reviewing factual
sufficiency do not apply.  Pierce v. State, 113 S.W.3d 431, 436
(Tex. App.—Texarkana 2003, pet. ref’d).  Instead,
we review the trial court’s decision regarding community supervision revocation
for an abuse of discretion and examine the evidence in a light most favorable
to the trial court’s order.  T.R.S., 115 S.W.3d at 321; Pierce, 113 S.W.3d at 436 (citing Garrett v. State, 619 S.W.2d 172, 174
(Tex. Crim. App. 1981)).  Thus, if the
greater weight of credible evidence creates a reasonable belief a defendant has
violated a condition of his or her community supervision, the trial court’s
order of revocation must be upheld.  Rickels, 202 S.W.3d at 763–64; Pierce, 113 S.W.3d at 436.  If the State’s proof is sufficient to prove
any one of the alleged community supervision violations, the revocation should
be affirmed.  Moore v. State, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980); T.R.S., 115 S.W.3d at 321.

            In this
case, the State alleged Duong committed the offense of criminal trespass, and
failed to pay the Crime Stopper, supervision, and RAD testing fees in a timely
manner.  We address the payment or
nonpayment of fees first. 

            Carol
Castillo, Duong’s community supervision officer, stated that Duong had complied
with all of the terms and conditions of his community supervision other than
receiving the criminal trespass charge. 
Castillo specified Duong had paid all of his fees and was “current.”[2]  No contrary evidence was presented, and the
State did not argue alleged nonpayment of fees to the trial court during
closing argument.  We find that the State
failed to prove by a preponderance of the evidence that Duong violated the
terms of his community supervision by failing to pay fees.  

            Next, we
review the evidence demonstrating criminal trespass.[3]  Dorland was an employee of a nail salon and
an employer of a Vietnamese restaurant. 
Duong worked at the salon and restaurant with Dorland.  Her employees, including Duong, lived at her
residence.  At the time, Duong was on
community supervision for an assault against Dorland.  Dorland had banned Duong from her house, but
she lifted the ban and let him come back because he had no other place to live
and he promised to never do “anything wrong no more.”  An unnamed employee, who knew Duong was on community
supervision, attempted to get him in trouble by telling Dorland he had made a
scene at the nail salon and cursed at the employer.  Dorland became afraid that Duong was “bad
again.”  Duong went to Dorland’s house on
the night in question.  Although Duong
lived at the residence, he did not have a key, and Dorland did not open the
front door based upon the other employee’s “lie.”  Duong knocked on Dorland’s window and wanted
to talk to her, but Dorland did not want to speak to him “because I’m afraid he’s
drinking beer.”  “I scared and I call the
police.”  She would have let him in if
she had known the other employee lied. 
She further stated that she wished she had not called the police because
“he did not do anything wrong.”  Dorland’s
cross-examination produced the following statements made to the investigating
officer: 

Q.        Do
you remember telling the police that he came to your house and beat on the back
door? 

 

A.        Yeah.


 

Q.        Do
you remember telling the police that he began to yell mean words at you?

 

A.        He
yell at me. 

 

Q.        He
yelled mean words at you?

 

A.        Yeah,
he did on the outside. 

 

Q.        And
then you said that you did not let Hoi in, right?

 

A.        Yeah.  I said that in the room.  I say I don’t want to let him in.  But I don’t know he --

 

Duong opened the window, and eventually found his way inside
the garage.  Officer Jonathan Price reported
that Dorland called and said “that the trespasser was in the house now [and]
she didn’t know how he got in.”  The
front door was locked when Price arrived at the scene and “there was . . . an
open window with the screen broken.” 
Price found Duong inside the garage drinking a beer.  He was detained while Price confirmed that a
ban had previously been issued against Duong for that residence.[4]  Dorland told Price she had not opened the
door because she was scared of Duong. 
This statement was made prior to her knowledge of the other employee’s
lie designed to get Duong in trouble. 
When asked if she told Duong to leave, Dorland said, “I don’t see
him.  I just call.”  

            Duong
testified that he had been given permission to live at Dorland’s house.  He denied knowledge of a current ban on the
residence, but later testified, “[S]he put the ban on me, but I feel that she
doesn’t know . . . how to . . . lift the ban up.”  Duong works for Dorland as manager of a
Vietnamese restaurant.  He did have an
altercation with another employee, but he had no idea when he went to the home
that night that Dorland did not want him there. 
Duong said he went into the residence because he kept calling, but Dorland
did not answer, and knew he had to stay home because he was on community
supervision.  He thought “nobody [was] in
the house.”  

            The elements
of criminal trespass applicable to this case are that:  (1) a person, (2) intentionally or
knowingly, (3) enters or remains on or in property of another, (4) without the
effective consent of the owner, (5) having notice that entry was forbidden or
received notice to depart but failed to do so.  Tex.
Penal Code Ann. § 30.05(a).  The
dispute concerns only whether Duong had notice that entry was forbidden or
received notice to depart and failed to do so. 

            The
evidence shows that at one time, Duong had been banned from Dorland’s home, but
both Dorland and Duong testified that she had allowed him to come back and
reside at her home.  The fact that
Dorland gave Duong permission to live at her home does not support a finding
that Duong had notice that entry was forbidden; in fact, it would support the
contrary conclusion, and Dorland testified that she had lifted the ban. 

              The other issue is whether Duong received
notice to depart the premises and failed to do so.  The testimony from the two parties was that
Duong came to the door, had no key, knocked on the door, and Dorland, having
heard a tale about Duong’s confrontation with another employee, was afraid and
did not want Duong there.  But the
important legal issue is whether Duong received notice to depart; we find no
evidence that Dorland ever told Duong to leave or in any manner gave him notice
to depart.  The testimony showed she did
not want him there, was afraid he was drinking beer, and she called the
police.  When asked directly if she had
told Duong to leave her answer was, “I don’t see him.  I just call.”  The evidence is insufficient to prove Duong
committed the offense of criminal trespass. 

            After
reviewing the evidence in a light most favorable to the trial court’s order, we
conclude that the State failed to prove that the greater weight of credible
evidence created a reasonable belief that Duong violated a condition of his
community supervision.  The order 

 

 

 

 

 

 

revoking Duong’s community supervision is reversed, judgment
is rendered continuing Duong on community supervision, and Duong is ordered discharged.  

             

 

 

 

 

                                                                                                Jack
Carter

                                                                                                Justice

 

Date Submitted:          August
17, 2010         

Date Decided:             September
16, 2010

 

Do Not Publish           

 

 

 

 











[1]Duong
was also ordered to pay a $1,000.00 fine and $223.00 in court costs. 





[2]Castillo
testified, “He has been delinquent, but maybe like $65, but it’s–the way the computer
shows it, at the first of the month it shows that he’s delinquent for that
month, but they have that month to pay the balance.”  We interpret this testimony to mean that
Duong was not delinquent, but the computer showed that a $65.00 balance was due
at the end of the month. 

 





[3]The
offense of criminal trespass is committed if the person “enters or remains on or
in property of another . . . without effective consent and the person (1) had
notice that the entry was forbidden; or (2) received notice to depart but
failed to do so.”  Tex. Penal Code Ann. § 30.05(a)(1), (2) (Vernon Supp. 2010).





[4]Dorland
claimed that the ban was for the nail salon, but Duong acknowledged that the
ban was for the residence.  In either
event, Dorland believed she had lifted the ban.