

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-13-00185-CR

_____

NEDA KINDSVATER SMITH, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 24855

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

## MEMORANDUM OPINION

Neda Kindsvater Smith appeals the trial court's revocation of her community supervision and sentence of twenty-four months' confinement in state jail for the underlying offense of burglary of a building. On appeal, Smith argues that the evidence was insufficient to establish either that she smuggled a controlled substance into the Lamar County Jail or that the substance was olanzapine. The record shows otherwise. Finding the record sufficient on both points, we affirm the trial court's judgment.

The decision to revoke community supervision rests within the discretion of the trial court. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *In re T.R.S.*, 115 S.W.3d 318, 320 (Tex. App.—Texarkana 2003, no pet.). In a revocation hearing, the trial court is the sole trier of the facts and determines the credibility of the witnesses and the weight given to their testimony. *T.R.S.*, 115 S.W.3d at 321. A trial court's decision to revoke community supervision is examined in the light most favorable to the trial court's order. *Id.*

To revoke community supervision, the State must prove by a preponderance of the evidence every element of at least one ground for revocation. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 11 (West Supp. 2013); *T.R.S.*, 115 S.W.3d at 320. Here, if the greater weight of credible evidence created a reasonable belief that Smith violated a condition of her community supervision, abuse of discretion is not shown. *T.R.S.*, 115 S.W.3d at 321 (citing *Martin v. State*, 623 S.W.2d 391, 393 n.5 (Tex. Crim. App. [Panel Op.] 1981)).

The first condition of Smith's community supervision required that she not violate any Texas laws. The Texas Penal Code states, "A person commits an offense if the person takes a

2

controlled substance or dangerous drug on property owned, used, or controlled by a correctional facility." TEX. PENAL CODE ANN. § 38.11(b) (West 2011). The State's motion to revoke Smith's community supervision alleged that, on May 7, 2013, Smith intentionally or knowingly brought olanzapine, a dangerous drug, into the Lamar County Jail.[1] Smith argues that, because there was no scientific testing of the contents of the pills and because the pills themselves were not introduced as evidence, there was no evidence (1) that the substance she was carrying was olanzapine, a controlled substance, or, consequently, (2) that she brought a controlled substance into the jail.[2]

The trial court ordered Smith confined in the Lamar County Jail for sixty days as a condition of her community supervision. Smith was to begin her confinement by reporting to the jail on May 6, 2013. According to Lamar County jailers Maggie Valentino and Beverly Sulzar, Lamar County Jail policy requires a "pat down" of new inmates during the intake process, but only permits a body cavity search when specifically requested by a police officer. Upon Smith's arrival at the jail on May 6, she was patted down, provided with an orange uniform, and assigned to a cell block with six or seven other inmates.

Inmate Ashely Law testified that Smith arrived at their shared cell at 4:00 a.m. on May 7, 2013. Law testified that she believed Smith to be under the influence of some substance because Smith attempted to crawl inside of a trash can. Between 6:30 and 7:00 a.m., Law witnessed

---

[1]To rebut the possibility of an affirmative defense, the State further alleged that the drug was not brought into the jail warehouse, to a pharmacy, or to a physician. *See* TEX. PENAL CODE ANN. § 38.11(e) (West 2011).

[2]Although Smith's brief purports to assert three separate points of error as to why the evidence is insufficient, we find that the sole issue raised by Smith's brief is whether sufficient evidence supports the trial court's order of revocation.

Smith retrieving something from inside of her while sitting on the toilet. Law testified that Smith had her hands around her vagina and that there was blood in the toilet when she got up. Law observed a pill on the ground, and the jailers were notified of the presence of a possible controlled substance.

Valentino arrived in the cell and noticed a white substance around Smith's mouth. Valentino approached Smith, squeezed Smith's mouth, and instructed her to spit out the contents. Smith swallowed, prompting Valentino to search her. In Smith's closed fist, Valentino found a plastic sandwich bag that appeared to be covered with blood and that was full of pills in a variety of colors. After locating another small yellow pill in Smith's pocket, Valentino turned the search of Smith's person over to Sulzar while Valentino searched Smith's cell.

Sulzar testified that Smith was very unsteady on her feet. Fearing that she would fall, Sulzar instructed Smith to sit down. Smith complied, and Sulzar resumed the search of Smith's person. Sulzar found more pills inside of Smith's shoes. According to Sulzar, Smith claimed she found the pills behind the toilet in the bathroom. Valentino located additional pills under Smith's sleeping mat. Valentino testified, "I asked [Smith] where she got the pills . . . [and Smith] said she got [them] from her vagina." Both Valentino and Sulzar testified that Smith appeared intoxicated and disoriented. While the search uncovered additional pills throughout the cell, no pills were located on any of Smith's cellmates.[3]

---

[3]At trial, Smith suggested that the pills found on her person could have been obtained from other inmates. Trial testimony established that inmates who receive medication are instructed to swallow that medication immediately in the presence of jail personnel. However, there was also testimony that some inmates only pretend to do so and instead hoard their medication for use in bartering with other inmates. Valentino testified to finding two or three pills as a result of inmate hoarding during her tenure, but she denied ever locating a large stash of pills as a result of the practice. Since Smith had been in her cell less than three hours at the time the pills at issue in this case were

4

Valentino testified that she gave the pills that were collected during the search to a male jailer who did not testify at trial. The State offered neither the pills nor the plastic bag recovered during the search as evidence at trial out of fear that they contained biohazardous material. Instead, the State introduced a photograph depicting pills and a bloody plastic bag; Valentino testified that this photograph (State's Exhibit 1) fairly and accurately depicted the items that she found on Smith.

Sam Wicks, a licensed pharmacist for thirty-seven years, testified without objection[4] that the pink pills in the photograph marked as State's Exhibit 1 had an identifying mark of "APO" on one side and "OLA 20" on the other.[5] Wicks testified that the pills in the photograph containing these marking were olanzapine, a prescription medication most commonly used to treat patients with bipolar disorder.[6]

Smith had only been in jail for a few hours before she was found intoxicated and carrying a large amount of pills. Jailers testified that they were not allowed to conduct body cavity searches of new inmates unless instructed by a police officer. Law testified that she witnessed

discovered, the conclusion that Smith had not obtained the pills from a source inside the jail was certainly reasonable.

[4] During Wicks' testimony, Smith only objected that the photograph had not been properly authenticated despite Valentino's testimony and as to relevance.

[5] The photograph depicted both the front and the back of the pink pills. The other pills could not be identified by their markings.

[6] In *Curtis v. State*, 548 S.W.2d 57, 59 (Tex. Crim. App. 1977), the Texas Court of Criminal Appeals held that a narcotics officer could not confirm or deny whether a white or brown powdery substance was heroin based solely on his observation of that substance. Citing *Curtis*, Smith argues that Wicks' testimony constituted insufficient evidence that the pills were olanzapine. As the Court of Criminal Appeals noted in *Curtis*, unlike heroin, which has no identifying mark differentiating it from other non-controlled, white or brown, powdery substances, olanzapine has identifying markers. *See id.* (recognizing that unique characteristics of green, leafy marihuana plants enables expert to differentiate marihuana from other green, leafy plants by sight alone).

Smith retrieving something from inside of her vagina. Shortly thereafter, Law saw a pill on the ground, jailers were notified, and a bloody bag containing a large amount of pills was located on Smith's person. A witness verified that a photograph of the pills, State's Exhibit 1, accurately depicted the pills found on Smith. Wicks testified he examined State's Exhibt 1 and could identify that some of the pills in the photograph were olanzapine, a controlled substance. Based on this evidence, the trial court found that Smith violated the terms and conditions of her community supervision by concealing a controlled substance in her body cavity and then smuggling it into the Lamar County Jail.

After reviewing the evidence presented at the revocation hearing in a light most favorable to the revocation order, we find that the trial court was within its discretion to conclude that the State met its burden to prove, by a preponderance of the evidence, that Smith committed an offense by bringing a controlled substance into the jail.

We overrule Smith's sole point of error and affirm the trial court's judgment.


Jack Carter
Justice


Date Submitted: February 21, 2014
Date Decided: April 8, 2014

Do Not Publish

6