Charles WILSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–92–0055–CR.

Court of Appeals of Texas, Amarillo.

May 19, 1993.

J. Pink Dickens, Plainview, for appellant.

Terry McEachern, Crim. Dist. Atty., Robert W. Kinkaid, Jr., Asst. Crim. Dist. Atty., Plainview, for appellee.

Before DODSON, BOYD and POFF, JJ.

POFF, Justice.

Charles Wilson, appellant, was charged by indictment with the offense of delivery of a controlled substance, to-wit: less than 28 grams of cocaine. Appellant was found guilty by a jury and the jury assessed his punishment at 65 years confinement in the Institutional Division of the Texas Department of Criminal Justice. The 65–year sentence was ordered to run consecutively with a prior 12–year sentence. From the judgment and sentence, appellant brings this appeal.

In seven points of error, appellant complains of the court's ordering his sentence to run consecutively with a previous sentence, the court's denial of his challenge to the jury panel, and the court's denial of his motion to dismiss. Appellant also complains of certain evidentiary rulings by the court and appellant complains of the court's overruling his objection to the State's closing argument on punishment. We will overrule the points of error and affirm.

Appellant and 17 other persons were arrested on December 21, 1990 during a coordinated drug raid in Hale County, Texas. The raid was covered by the local news media, some of whom participated in the raid. Subsequent to the raid, the district attorney and other law enforcement officials made comments concerning the raid. None of the comments were directed at appellant.

Appellant's arrest warrant resulted from an alleged undercover purchase of cocaine on October 19, 1990. An Officer Boyd, who was working undercover, had made appellant's acquaintance prior to October 19, 1990. On the evening of October 19, 1990, Boyd encountered appellant at a parking lot in the 1600 block of North Austin Street in Plainview, Hale County, Texas. Boyd asked appellant if he could buy some cocaine from him. Appellant responded affirmatively. Appellant then got in Boyd's car and directed him to an apartment complex at 1100 East 5th Street in Plainview. Appellant asked Boyd how much cocaine he wanted and Boyd asked for one-half gram. Appellant exited the car and returned with the cocaine. Boyd returned appellant to the parking lot where they had met and gave him $45 for the cocaine. During the trip to and from the parking lot, the conversation between appellant and Boyd was taped by a recorder concealed in Boyd's vehicle.

An Officer Lujan testified for the State that he had staked out the apartment complex at 1100 East 5th Street in Plainview. Lujan observed Boyd's vehicle stop at the apartment complex and a large male exit the vehicle, enter an apartment and return shortly to the vehicle. Due to the darkness, Lujan could not identify the person who was with Boyd. Two other officers testified, however, that they were familiar

with appellant and that the voice on the recording made in Boyd's car on October 19, 1990, was appellant's voice. The tape recording of the conversation between appellant and Boyd was offered into evidence. Except for appellant's objections to Boyd's shorthand rendition of the taped conversations, Boyd's testimony concerning the field testing of the cocaine, and the introduction of the chemist's lab report, no evidentiary objections are made against the State's case.

■ In his first point of error, appellant contends the court, in ordering his 65–year sentence "to run consecutively with a prior 12 year sentence," abused its discretion. During the punishment phase of the trial, the State offered evidence that in 1989, appellant was convicted of delivery of methamphetamine and sentenced to 12 years. The 65–year sentence was "stacked" onto the 12–year sentence. Although appellant argues he was on parole on the 12–year sentence at the time of trial, there is no evidence in the record of his status.

Appellant argues that the trial court, by "stacking" his 65–year sentence, violated the "spirit" of Article 42.08 of the Texas Code of Criminal Procedure. Appellant's argument rests upon his allegedly being on parole. Appellant does not contest that if in fact he were still incarcerated, "stacking" his second sentence would not be violative of Art. 42.08. It would therefore appear from the record that, there being no evidence appellant was on parole, there is no factual basis for appellant's first point of error.

Even if, *arguendo,* appellant proved he was on parole, we would find no error in the court's action. Appellant concedes in his brief that he has found only one case dealing with the effects of Article 42.08 and a paroled defendant. *See Jimenez v. State,* 634 S.W.2d 879 (Tex.App.—San Antonio 1982, pet. ref'd). Appellant candidly admits the court's action was in keeping with *Jimenez* had he been on parole. Appellant argues that the *Jimenez* decision is wrong for it violates the spirit of Article 42.08. If, in fact, appellant was shown to

have been on parole at the time of his sentencing, we would choose to follow the *Jimenez* holding. Appellant's first point of error is therefore overruled.

In point of error two, appellant contends the court erred in overruling his motion to quash the jury panel pursuant to *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1985). Appellant challenged the State's exercise of peremptory challenges against jurors Williams, White and Fowler. Appellant was black as were Williams, White and Fowler. These three persons were the only black members of the jury panel. The court granted appellant's request for a *Batson* hearing. At the hearing, the State gave the following explanations for striking the three black jurors.

The State explained that jurors White and Williams were struck because they both were friends of appellant and had attended church with him. The State struck a white juror, Mr. Curry, who also was acquainted with appellant. The State stated they struck all jurors who knew appellant.

Juror Williams stated "she had known appellant since he was little, that they attended church together and she knew his parents well, and that it hurt to see him in the courtroom." She further stated she did not want to sit on the case. Juror White also stated she had known appellant all his life, was friends with his parents and attended church with him. Mr. Curry stated he knew appellant and they had gone to school together.

■ A close personal acquaintance with a defendant's family is recognized as a racially neutral reason for exercising a peremptory strike. *DeBlanc v. State,* 799 S.W.2d 701, 711–713 (Tex.Crim.App.1990); *Keeton v. State,* 749 S.W.2d 861 (Tex.Crim. App.1988); *Dixon v. State,* 828 S.W.2d 42, 46 (Tex.App.—Tyler 1991, pet. ref'd). Once the prosecutor gives a racially neutral explanation for striking the jurors, he has sustained his burden and rebutted the prima facie showing of purposeful discrimination. A fact issue is then presented for the trial judge to resolve. The defendant bears

the ultimate burden of proving the challenges were used in a discriminatory manner. *Williams v. State*, 804 S.W.2d 95 (Tex.Crim.App.1991); *Tompkins v. State*, 774 S.W.2d 195 (Tex.Crim.App.1987). We must give great deference to the findings of the trial court since its determinations are essentially factual.

In reviewing the trial court's decision, we view the evidence in the light most favorable to the ruling, to determine if there is sufficient evidence to support the ruling. If the record supports the trial court's finding, we will not disturb the ruling. *Keeton v. State*, 749 S.W.2d 861 (Tex.Crim.App.1988). We may not reverse unless the determination is clearly erroneous. We find the evidence supports the trial court's ruling that the preemptory challenges of Williams and White were not exercised in an unconstitutional discriminatory fashion.

Regarding juror Fowler, the prosecutor offered testimony concerning his belief that Fowler had committed a criminal offense.[1] Additionally, the prosecutor testified that his office had on four prior occasions prosecuted and convicted Fowler's brother. The previous prosecution and conviction by the prosecutor of Fowler's brother is a recognized and acceptable reason for exercising a preemptory challenge. *Rasco v. State*, 739 S.W.2d 437 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd). There is no evidence that the State failed to strike any other jurors who had relatives who had been involved with the criminal justice system.

Likewise, the striking of a juror who has been convicted for even minor criminal infractions has been upheld to be racially neutral. *Keeton v. State*, 749 S.W.2d 861 (Tex.Crim.App.1988); *Branch v. State*, 774 S.W.2d 781 (Tex.App.—El Paso 1989, pet. ref'd); *Sims v. State*, 768 S.W.2d 863 (Tex.App.—Texarkana 1989, *pet. dism'd, improvidently granted*), 792 S.W.2d 81 (Tex.Crim.App.1990). Also, a juror need not have been actually prosecuted for criminal acts in order to permit the State to strike. *Perry v. State*, 770 S.W.2d 950 (Tex.App.—Fort Worth 1989, no pet.)[2] We find little difference in this case and in the cases in which a juror was convicted of a misdemeanor or charged and not prosecuted for a felony.

We find a prosecutor could have a race-neutral, reasonable belief that a juror who has had sex with a 13–year–old has a propensity to not conform his conduct within the law. Such an individual could reasonably be expected to be biased against authority and he could reasonably be expected to not follow his oath and give the State a fair trial. Discounting the juror's character flaws, appellant complains that the State did not examine juror Fowler. Appellant also complains that the State failed to offer the testimony of the officer who related to the prosecutor the information concerning Fowler and the 13–year–old girl.

Failing to question a juror is one of the criteria in a search for racial bias, however, such a failure in and of itself will not prove racial discrimination. In appellant's case, it would seem futile to question a man about his sexual conduct with a 13–year–old. This is especially the case in light of the fact that he had not been charged with the offense and the offense had not been barred by limitations. We also find no harm in the State not questioning the juror concerning the prior criminal acts of his brother. If, in fact, the juror had been questioned, his responses would have done little to reassure the prosecutor he would not be biased against the State.

Appellant also complains that the officers who related the story concerning the juror and the 13–year–old were not offered as witnesses. The appellant's counsel was offered the opportunity to cross-examine the prosecutor and he did so in a professional manner. Officers DeLuna and Carroll were also available had appellant wished to examine them. We do not find

---

1. The prosecutor testified he had been informed by Officers DeLuna and Carroll that juror Fowler had been, within the past year-and-a-half, caught having sex with a 13–year–old girl.

2. Juror charged with, but not prosecuted, for rape.

the State's failure to call the officers to be fatal to its proof.

The State offered two race-neutral reasons for excusing Fowler. Each reason has been previously accepted by the courts of this state as a legitimate, racially-neutral justification for striking a juror. The court, having weighed the evidence, correctly concluded the strikes were not the result of purposeful racial discrimination. Point of error two is overruled.

■ In point of error three, appellant contends the court erred in denying his motion to dismiss the prosecution. The basis for appellant's motion to dismiss was the State's alleged violation of Tex.R.Disciplinary P. 3.07 and 3.09 (1993), *reprinted in* Tex.Gov't Code Ann., tit. 2, subtit. G app. (Vernon Supp.1993).

Rule 3.07. Trial Publicity

(a) In the course of representing a client, a lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicatory proceeding. A lawyer shall not counsel or assist another person to make such a statement.

\* \* \* \* \* \*

(c) Notwithstanding paragraphs (a) and (b)(1)–(5), a lawyer involved in the investigation or litigation of a matter may state without elaboration:

\* \* \* \* \* \*

(7) in a criminal case:

(i) the identity, residence, occupation and family status of the accused;

(ii) if the accused has not been apprehended, information necessary to aid in apprehension of that person;

(iii) the fact, time and place of arrest; and

(iv) the identity of investigating and arresting officers or agencies and the length of the investigation.

Rule 3.09. Special Responsibilities of a Prosecutor

The prosecutor in a criminal case shall:

\* \* \* \* \* \*

(e) Exercise reasonable care to prevent persons employed or controlled by the prosecutor in a criminal case from making an extrajudicial statement that the prosecutor would be prohibited from making under Rule 3.07.

■ We first note that we find no violations of Rules 3.07 or 3.09. The raid in which appellant and 17 other persons were arrested was a significant event in Hale County and was reported in the news media. As part of the news coverage of the arrests, it was attributed to the police and members of the district attorney's office that a number of those persons arrested were ex-convicts, and that a number of the persons were the subject of multiple warrants. The record does not reflect that appellant was identified by the police or the district attorney as an ex-convict or a person for whom there were multiple arrest warrants. The complained-of comments were general comments not intended to prejudice appellant's right to a fair trial. We do not read Rules 3.07 and 3.09 as prohibiting district attorneys or police officers from discussing background events surrounding arrests or the commission of crimes.

The thrust of appellant's argument is that the press coverage of his arrest prejudiced his right to a fair trial. In our opinion, a change of venue—not a dismissal of the case—is the proper remedy for his complaint. Appellant did, in fact, unsuccessfully raise the venue issue, but he chose not to appeal the court's ruling on his motion.

■ Even if, *arguendo*, there were violations of the Disciplinary Rules, such violations would not entitle appellant to a dismissal of all charges. Purported ethical violations of a prosecutor should be dealt with by the administrative procedures specifically established to deal with such conduct. *Randell v. State*, 770 S.W.2d 644 (Tex.App.—Amarillo 1989, no pet.). We have found no authority for appellant's proposition that violations of the Code of Professional Responsibility constitute reversible error. The Code of Professional

Responsibility affords a criminal defendant no affirmative rights. *Youens v. State,* 742 S.W.2d 855 (Tex.App.—Beaumont 1987, no pet.)

■ Being convinced that violations of the Code are not grounds for reversible error, we surely are not convinced such violations would be grounds for a dismissal. A court's right to grant a dismissal on the motion of a defendant or on its own motion is extremely limited. Absent constitutional or statutory authority, a trial judge may only dismiss a criminal case on the motion of the prosecutor. *State v. Johnson,* 821 S.W.2d 609, 612–13 (Tex.Crim.App.1991). We know of no statutory or constitutional authority for dismissing a case for violations of the Rules of Professional Responsibility. Point of error three is overruled.

■ In point of error four, appellant contends the court erred in failing to sustain his objection to evidence of field tests conducted on the suspected cocaine purchased from him. Appellant contends the effect of the testimony concerning the field test was an attempt by the State to offer scientific proof that the substance was cocaine. This being the case, appellant argues that the scientific evidence was offered improperly. *Kelly v. State,* 824 S.W.2d 568 (Tex.Crim.App.1992).

We first note that *Kelly* was a case of first impression involving the introduction of "novel scientific evidence," *i.e.* DNA. A field test for cocaine is certainly not "novel scientific evidence." Furthermore, we cannot agree with appellant's premise that the testimony offered by the State concerning the field test was scientific evidence. We accept the State's position that such evidence was merely offered to establish the chain of custody of the substance. Having established the chain of custody, the State later offered evidence of the scientific test run on the substance by a chemist. The chemist testified that the tests showed the substance to be cocaine.

The State further contends that any error created by the field test evidence was rendered harmless by the subsequent testimony of the chemist. *See Bueno v. State,*

677 S.W.2d 261 (Tex.App.—Corpus Christi 1984, pet. ref'd). Even if, *arguendo,* the field test evidence was improperly received, we find that under *Bueno v. State,* the subsequent testimony of the chemist rendered the error harmless. Point of error four is overruled.

■ In point of error five, appellant complains of the overruling of his objection to testimony of Officer Boyd which characterized a conversation Boyd had with appellant. Appellant contends that Boyd's testimony was an expert opinion and a violation of Tex.R.Crim.Evid. 701. Appellant set out in his brief the following objectionable testimony:

*The State:* What did you talk about on the way back?

*Boyd:* Mr. Wilson brought up conversation about—what it boiled down to was that I was safer dealing with him than other people that he—

*Appellant:* Objection, your Honor. He's testifying as to what his opinion of the conversation said rather than what conversation was.

*The Court:* I'll overrule.

*The State:* Go ahead.

*Boyd:* Basically, that I would be safer dealing with him than with the other people that had been dealing with.

We do not find the testimony to be in violation of Rule 701. The officer was merely giving a permissible short-hand rendition of the conversation. *See Anguiano v. State,* 774 S.W.2d 344 (Tex.App.—Houston [14th Dist.] 1989, no pet.); *Williams v. State,* 764 S.W.2d 6 (Tex.App.—Texarkana 1988, no pet.). The jury had heard a tape recording of the conversation about which Boyd testified. After reviewing the record, we find Boyd's inference to be rational based upon his perception and helpful to a clear understanding of the conversation. Point of error five is therefore overruled.

In point of error six, appellant contends the court erred in overruling his objection to State's exhibit ə 1. State's exhibit ə 1 is a lab report made by Mr. Murphy, a chemist with the Texas Department of Public Safety. At trial, appellant objected that

the admission of Murphy's report constituted impermissible bolstering. Appellant opined that since Murphy had already testified as to the procedures he followed and the results of the test, the report would add nothing and would be bolstering. On appeal, appellant contends the offer of the report violated Rule 803 of the Texas Rules of Criminal Evidence as interpreted by *Cole v. State,* 839 S.W.2d 798 (Tex.Crim. App.1990). In his brief, appellant acknowledges that the objection to the exhibit may not have been perfect. Appellant contends, however, that the exhibit was inadmissible under *Cole,* and therefore the court had no discretion to admit the evidence, citing *Gilbert v. State,* 808 S.W.2d 467 (Tex.Crim. App.1991).

We first note we do not agree with appellant that *Cole v. State* prohibits the introduction of laboratory reports. We do not read *Cole* or Rule 803 to preclude from evidence the laboratory report or notes of the chemist, when the testifying chemist actually performed the tests. Such evidence in our opinion is neither impermissible bolstering or impermissible hearsay.

We must also agree with the State's contention that appellant's point on appeal does not comport with his trial objection. Therefore, nothing is presented for review. *Rovinsky v. State,* 605 S.W.2d 578 (Tex. Crim.App. [Panel Op.] 1980); *Bailey v. State,* 804 S.W.2d 226 (Tex.App.—Amarillo 1991, no pet.). Point of error six is overruled.

In point of error seven, appellant contends the State's argument at the punishment stage constituted an attack on the appellant by attacking his defense counsel. Appellant offers the following for our consideration:

> *The State:* If you will look in your court's charge, Ladies and Gentlemen, do y'all see anything in there that says the amount of time is tied to the amount of cocaine you have? Is that in your court's charge? I missed it. Of course, it's not there. That's Mr. Dickens's way

of looking at it, that's the way a defense lawyer looks at it, Ladies and Gentlemen. And that's not the law.

> *Mr. Dickens:* Objection, your Honor. Attacking the Defendant over the head of his counsel.

> *The Court:* I'll overrule the objection.

Appellant interprets these statements to be an impermissible accusation by the State of bad faith on the part of his counsel. Accusations of a defense counsel's bad faith or ethics is improper. *Fuentes v. State,* 664 S.W.2d 333 (Tex. Crim.App.1984). Jury arguments, however, must be viewed in the context of the entire argument and the evidence in the case. *Mosley v. State,* 686 S.W.2d 180 (Tex.Crim.App.1985); *Randell v. State,* 770 S.W.2d 644 (Tex.App.—Amarillo 1989, no pet.). Viewing the record as a whole, we do not find the argument to be an attack upon appellant's counsel. Additionally, we find the argument was a reasonable response to argument by appellant's counsel.[3]

In his closing argument, appellant's counsel argued that the small amount of cocaine delivered by appellant and the small amount of money received mitigated in favor of a minimum sentence. Appellant's counsel also argued it was evident appellant was only a minor player in the drug trade and that the real dealers remained free from prosecution. Appellant's counsel attempted to equate the range of punishment and the amount of drugs sold, inferring that the law envisioned lesser sentences for those who sold small amounts of drugs. As the State argued in response, there is no direct correlation between the range of punishment and the amount of cocaine delivered. Such argument was a reasonable response and the court did not err in overruling appellant's objection. Point of error seven is overruled.

In his eighth and final point of error, appellant complains that during the closing

---

**3.** A response to argument by opposing counsel is permitted under *Alejandro v. State,* 493 S.W.2d 230 (Tex.Crim.App.1973).

argument on punishment, the State argued outside the record. The following argument, appellant contends, is outside the record:

> *The State:* What Mr. Dickens says about whether or not he got all the money or not, that's pure supposition. How do we don't know that this isn't his apartment over here, if he got it over there, that they were working together.
>
> *Appellant:* Objection, your Honor. There's no evidence to that effect.
>
> *The Court:* I'll overrule the objection.
>
> *The State:* How do we not know that as—we don't.

In his punishment argument, as previously noted, appellant's counsel contended the appellant was merely a "poor dumb runner." Appellant's counsel asked the jury to deduce from the evidence that appellant did not have the cocaine on his person but in fact went to the apartment to get the drugs. Appellant also asked the jury to deduce that some other drug seller controlled the apartment.[4] According to appellant's theory, he was merely a middleman or agent, who only received a small portion of the profits from the sale.

The State contends that its argument was the converse of appellant's argument as to who possessed the supply of drugs and who controlled the apartment and who profited from the sale. The State argues it was reasonable to infer that appellant had control or joint control over the apartment and the drugs. The State thus contends the complained-of argument was not outside the record but rather an acceptable means of questioning the conclusions offered by appellant's counsel.

After examining the statement of facts and the argument we find that neither the State nor appellant's counsel argued outside the record. The deductions made by both the State and appellant as to whether the cocaine came from the apartment, and also who controlled the apartment and possessed the drugs and whether the drug proceeds were shared, were reasonable based on the facts before the jury. *Alejandro v. State,* 493 S.W.2d 230 (Tex.Crim.

App.1973). Point of error eight is overruled.

The judgment of the trial court is affirmed.

---

**4.** The record reflects the evidence as to who controlled the apartment is in dispute.