

**In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana**

_____

No. 06-10-00150-CR

_____

MICHAEL SHANE RAYMOND KESSLER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd Judicial District Court
Red River County, Texas
Trial Court No. CR01033

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Following his plea of guilty to the offense of possession of a controlled substance,[1] Michael Shane Raymond Kessler was placed on deferred adjudication community supervision for a period of three years in November 2008. Kessler appeals the trial court's subsequent revocation of community supervision, adjudication of guilt, and resulting sentence of ten years' imprisonment. Kessler claims the trial court erred in (1) the admission of evidence that field testing of certain drug paraphernalia revealed the presence of methamphetamine; and (2) permitting the arresting officer to testify that in his opinion, methamphetamine was present on the drug paraphernalia in Kessler's possession. Because we find that any error in the admission of this evidence was harmless, we affirm the judgment of the trial court.

## I. BACKGROUND

Kessler was arrested in McCurtain County, Oklahoma, on February 27, 2010, when City of Valliant Police Officer Devin Black spotted a vehicle at approximately 2:00 a.m. parked in a wooded area on an access road to the railroad tracks. As Black neared Kessler's vehicle, Kessler exited the vehicle and began walking toward Black. Kessler's hands were shaking and he was "very nervous." Even though it was dark, Kessler had a pinpoint pupil in both eyes. Upon request, Kessler gave Black permission to search his person. Upon doing so, an ink pen tube and a small piece of rolled up tinfoil were located in Kessler's pocket. Black noticed a crystalline-type substance inside the ink pen tube and a "burn type" residue on the tinfoil.

[1]TEX. HEALTH & SAFETY CODE ANN. § 481.115 (Vernon 2010).

2

According to Black, both the tinfoil and the ink pen tube were used for smoking methamphetamine. Kessler was placed under arrest for possession of methamphetamine and drug paraphernalia.

As a result of his Oklahoma arrest, the State filed a motion to proceed with adjudication, alleging Kessler violated a condition of his community supervision requiring that he "commit no offense against the laws of this or any State . . . ." Kessler was alleged to have violated this condition by (1) possessing a controlled substance in McCurtain County, Oklahoma, on February 27, 2010; and (2) possessing drug paraphernalia in McCurtain County, Oklahoma, on February 27, 2010.[2] At the revocation hearing, Black was permitted to testify, over Kessler's objection, that the results of a field test indicated the substance found on the two objects in Kessler's possession contained methamphetamine. Black further testified, again over Kessler's objection, that in his opinion, methamphetamine was present on the objects possessed by Kessler.

## II. ANALYSIS

The determination of admissibility of evidence is within the sound discretion of the trial court. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g); *see also Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). A trial court abuses its discretion when its determination is outside the zone of reasonable disagreement. *Howell v. State*, 175 S.W.3d 786, 790 (Tex. Crim. App. 2005).

---

[2]Kessler pled "not true" to both allegations.

3

## A.    The Disputed Testimony

Black testified that he conducted a field test on the tinfoil and ink pen tube found in Kessler's pocket and the test yielded positive results.  The trial court overruled Kessler's objection that Black was not qualified as an expert who could testify regarding the results of the field test.[3]  Kessler maintains on appeal that the admissibility of the results of a field test for a

_____

[3]The testimony regarding field testing and the ruling of the trial court on that testimony is as follows:

A    [By Black]   I asked Mr. Kessler if there was anything else in his vehicle, and he stated no.   At that time I placed Mr. Kessler under arrest.

Q    [By the State]   What for?

A    For possession of methamphetamine and drug paraphernalia.   The objects were field-tested and received a positive . . .

[DEFENSE COUNSEL]:   Your Honor, we would object to any testimony about field test results unless this witness is qualified as an expert.

THE COURT:   Qualify him on field test.

Q    Are you familiar with field-testing substances for controlled substances?

A    Yes.

Q    And have you done that on many or numerous–numerous or few occasions?

A    Numerous.

Q    And do you feel that when you did it, it was accurate–what you were doing?

A    Yes, sir.

[DEFENSE COUNSEL]:   Your Honor, we'll object to any testimony as to accuracy.   Unless he can be shown to be some kind of a chemist or qualified to administer drug tests or test drugs, I don't think he can testify to any kind of results.

THE COURT:   Overruled.

4

controlled substance is properly the subject of expert testimony. We agree. *See Smith v. State*, 874 S.W.2d 720, 721 (Tex. App.—Houston [1st Dist.]), *pet. ref'd*, 887 S.W.2d 948 (Tex. Crim. App. 1994) (testimony about performance and results of field test is expert testimony).[4] Rule 702 of the Texas Rules of Evidence sets forth three conditions for the admissibility of expert testimony: (1) the expert must be qualified by knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) the expert testimony must assist the trier of fact to understand the evidence or determine a fact in issue. TEX. R. EVID. 702; *Malone v. State*, 163 S.W.3d 785, 792 (Tex. App.—Texarkana 2005, pet. ref'd).

Here, we are concerned with the first requirement of Rule 702—the qualification of the witness as an expert. Black's qualifications as an expert in this instance are admittedly thin. We are only told that Black was experienced in conducting field tests for controlled substances and that he conducted such tests on numerous occasions in the past. In *Smith*, the officer conducted a field test of a substance found near the appellant, and the test indicated positive for cocaine. A subsequent chemical analysis revealed the substance to be cocaine. *Smith*, 874 S.W.2d at 721. While the officer in that case was permitted to testify about the procedure he used in performing

---

[4]The State takes the position that testimony concerning a narcotics field test is not scientific evidence, and therefore, Black's testimony regarding the results of the field test was admissible. In support of this position, the State relies on *Wilson v. State*, 854 S.W.2d 270, 276 (Tex. App.—Amarillo 1993, pet. ref'd) (field test for cocaine not "novel scientific evidence"). We note that the standard for determining admissibility of scientific evidence, set forth in *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992), is not limited to novel scientific evidence but, rather, applies to all scientific evidence. *Hartman v. State*, 946 S.W.2d 60 (Tex. Crim. App. 1997). Moreover, "testimony concerning the field test" in *Wilson* was merely offered to establish the chain of custody of the substance; the State later offered evidence of the scientific test run on the substance by a chemist. *Wilson*, 854 S.W.2d at 276. Here, the State did not offer the testimony of a chemist to prove the identity of the substance found on the tinfoil and ink pen tube. The trial court sustained Kessler's objection to the admissibility of laboratory test results.

5

the field test, his conclusion as to the results of the field test was accorded no probative value. *Id.* at 722; *see also Duran v. State*, 552 S.W.2d 840, 843 (Tex. Crim. App. 1977) (experienced narcotics officer not qualified to testify that brown powdered substance was heroin). In this case, we are told that Black had conducted numerous field tests for controlled substances in the past. While such testimony might qualify Black to testify regarding the procedure used to perform the field test, it does not necessarily qualify him to testify as to the identity of the substance tested.

Kessler also complains that the trial court erred in allowing Black to testify that in his opinion, methamphetamine was present on the objects possessed by Kessler. The objection to this testimony was likewise based on the premise that Black was not qualified as an expert to provide such testimony. The argument and authority presented in support of this point of error is essentially identical to that presented in support of Kessler's first point of error—that Black was not qualified as an expert witness. Accordingly, we apply the same reasoning and analysis to each point of error.

### B.    Any Error in the Admission of Black's Testimony Was Harmless

Although the trial court erred in the admission of Black's testimony regarding field test results and Black's opinion that the drug paraphernalia in Kessler's possession contained methamphetamine, we determine that any such error was harmless. A violation of an evidentiary rule that results in the erroneous admission of evidence is not constitutional error. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). When a nonconstitutional error is made

6

during trial, it will be disregarded as harmless if the error did not affect the substantial rights of the defendant. TEX. R. APP. P. 44.2(b); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A substantial right is implicated when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King*, 953 S.W.2d at 271. In addition to the disputed testimony offered by Black, Black further testified, without objection, that Kessler admitted the substance in question was methamphetamine:

Q      [By the State]   Did Mr. Kessler admit to you that these were–that this was methamphetamine?

A      [By Black]   Yes, I believe he did.

Q      He was asking for a way to work these charges off?

A      Yes, sir.

At the conclusion of the hearing, the trial court relied on Kessler's admission as reflected in the foregoing testimony in finding Kessler was in violation of the terms and conditions of his community supervision:   "the defendant, in the testimony of the officer who testified, made an admission in the presence of the officers as to the use of methamphetamine, and that in turn adds to the credibility of the statement that he made of working off this charge as an informer."

Black further testified, without objection, that Kessler was charged with the possession of drug paraphernalia (the rolled tinfoil and ink pen tube) because "[d]rug paraphernalia in Oklahoma is the use of any object to produce any narcotic in the human body.   That would be the aluminum

7

foil and the . . . tube of the pen."[5]   The trial court specifically found that Kessler was in possession

of drug paraphernalia in violation of Oklahoma law and in violation of the terms and conditions of

his community supervision.[6]

The determination of an adjudication of guilt is reviewable in the same manner used to

determine whether sufficient evidence supported the trial court's decision to revoke community

supervision.  *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(b) (Vernon Supp. 2010).   While

---

[5]The trial court took judicial notice of the laws of the State of Oklahoma, as they relate to the possession of a controlled substance as well as to the possession of drug paraphernalia.   The applicable criminal statutes provide, in pertinent part:

> A. 1.  It shall be unlawful for any person knowingly or intentionally to possess a controlled dangerous substance unless such substance was obtained directly, or pursuant to a valid prescription or order from a practitioner, while acting in the course of his professional practice, or except as otherwise authorized by this act.

63 OKLA. STAT. ANN. § 2-402 (West 2010).

> B.   No person shall use drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body a controlled dangerous substance in violation of the Uniform Controlled Dangerous Substances Act, except those persons holding an unrevoked license in the professions of podiatry, dentistry, medicine, nursing, optometry, osteopathy, veterinary medicine or pharmacy.
>
> C. No person shall deliver, sell, possess or manufacture drug paraphernalia knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body a controlled dangerous substance in violation of the Uniform Controlled Dangerous Substances Act.

63 OKLA. STAT. ANN. § 2-405 (West 2010).

[6]Kessler's sole challenge on appeal is directed toward Black's testimony regarding the results of the field test and his opinion that the substance in question was methamphetamine.   Kessler does not challenge the trial court's finding that he "was in possession of drug paraphernalia and that is a violation of Oklahoma law."   This is likewise a violation of the terms and conditions of Kessler's community supervision, which provide that "Defendant shall commit no offense against the laws of this or any State or of the United States or any other Country."

the decision to revoke community supervision rests within the discretion of the trial court, it is not absolute. *In re T.R.S.*, 115 S.W.3d 318, 320 (Tex. App.—Texarkana 2003, no pet.). To revoke community supervision, the State must prove every element of at least one ground for revocation by a preponderance of the evidence. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 10 (Vernon Supp. 2009); *T.R.S.*, 115 S.W.3d at 320; *Johnson v. State*, 943 S.W.2d 83, 85 (Tex. App.—Houston [1st Dist.] 1997, no pet.). "'Preponderance of the evidence' has been defined as the greater weight and degree of credible testimony." *T.R.S.*, 115 S.W.3d at 320. In other words, if the greater weight of credible evidence in this case created a reasonable belief that Kessler violated a condition of community supervision, the standard was met. *Id.* at 321 (citing *Martin v. State*, 623 S.W.2d 391, 393 n.5 (Tex. Crim. App. [Panel Op.] 1981)).

Based on (1) Kessler's admission via Black's testimony and (2) Black's testimony that Kessler was in possession of drug paraphernalia, the greater weight of the credible evidence created a reasonable belief that Kessler violated at least one condition of his community supervision by a preponderance of the evidence. Therefore, even if the trial court erred in admitting Black's testimony regarding the field test results and Black's opinion testimony that the substance in question was methamphetamine, such error is harmless in light of the fact that there is other, credible evidence to support the revocation of Kessler's community supervision and subsequent adjudication of guilt. Any error in the admission of the disputed testimony did not affect Kessler's substantial rights and must therefore be disregarded. *See* TEX. R. APP. P. 44.2(b).

9

## III. CONCLUSION

We affirm the judgment of the trial court.

Bailey C. Moseley
Justice

Date Submitted:     January 27, 2011
Date Decided:       January 28, 2011

Do Not Publish

10