In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00150-CR

                                                ______________________________

 

 

                    MICHAEL SHANE RAYMOND KESSLER,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                      On Appeal from the 102nd
Judicial District Court

                                                          Red
River County, Texas

                                                          Trial Court
No. CR01033

 

                                                    
                                              

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            Following
his plea of guilty to the offense of possession of a controlled substance,[1]
Michael Shane Raymond Kessler was placed on deferred adjudication community
supervision for a period of three years in November 2008.  Kessler appeals the trial court’s subsequent
revocation of community supervision, adjudication of guilt, and resulting sentence
of ten years’ imprisonment.  Kessler
claims the trial court erred in (1) the admission of evidence that field
testing of certain drug paraphernalia revealed the presence of methamphetamine;
and (2) permitting the arresting officer to testify that in his opinion,
methamphetamine was present on the drug paraphernalia in Kessler’s
possession.  Because we find that any
error in the admission of this evidence was harmless, we affirm the judgment of
the trial court.

I.          BACKGROUND

            Kessler was
arrested in McCurtain County, Oklahoma, on February 27, 2010, when City of
Valliant Police Officer Devin Black spotted a vehicle at approximately 2:00
a.m. parked in a wooded area on an access road to the railroad tracks.  As Black neared Kessler’s vehicle, Kessler exited
the vehicle and began walking toward Black. 
Kessler’s hands were shaking and he was “very nervous.”  Even though it was dark, Kessler had a
pinpoint pupil in both eyes.  Upon
request, Kessler gave Black permission to search his person.  Upon doing so, an ink pen tube and a small
piece of rolled up tinfoil were located in Kessler’s pocket.  Black noticed a crystalline-type substance
inside the ink pen tube and a “burn type” residue on the tinfoil.  According to Black, both the tinfoil and the
ink pen tube were used for smoking methamphetamine.  Kessler was placed under arrest for
possession of methamphetamine and drug paraphernalia.  

            As
a result of his Oklahoma arrest, the State filed a motion to proceed with
adjudication, alleging Kessler violated a condition of his community
supervision requiring that he “commit no offense against the laws of this or
any State . . . .”  Kessler was alleged
to have violated this condition by (1) possessing a controlled substance in
McCurtain County, Oklahoma, on February 27, 2010; and (2) possessing drug
paraphernalia in McCurtain County, Oklahoma, on February 27, 2010.[2]  At the revocation hearing, Black was
permitted to testify, over Kessler’s objection, that the results of a field
test indicated the substance found on the two objects in Kessler’s possession
contained methamphetamine.  Black further
testified, again over Kessler’s objection, that in his opinion, methamphetamine
was present on the objects possessed by Kessler.

II.        ANALYSIS

            The determination
of admissibility of evidence is within the sound discretion of the trial
court.  Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim.
App. 1990) (op. on reh’g); see also Apolinar v. State, 155 S.W.3d 184, 186 (Tex. Crim.
App. 2005).  A trial court abuses its
discretion when its determination is outside the zone of reasonable
disagreement.  Howell v. State, 175 S.W.3d 786, 790 (Tex. Crim. App. 2005).

            A.        The Disputed Testimony

            Black testified that he conducted a
field test on the tinfoil and ink pen tube found in Kessler’s pocket and the
test yielded positive results.  The trial
court overruled Kessler’s objection that Black was not qualified as an expert
who could testify regarding the results of the field test.[3]  Kessler maintains on appeal that the
admissibility of the results of a field test for a controlled substance is
properly the subject of expert testimony. 
We agree.  See Smith v. State, 874 S.W.2d 720, 721 (Tex. App.––Houston [1st
Dist.]), pet. ref’d, 887 S.W.2d 948
(Tex. Crim. App. 1994) (testimony about performance and results of field test
is expert testimony).[4]  Rule 702 of the Texas Rules of Evidence sets
forth three conditions for the admissibility of expert testimony:  (1) the expert must be qualified by
knowledge, skill, experience, training, or education; (2) the subject matter of
the testimony is an appropriate one for expert testimony; and (3) the expert
testimony must assist the trier of fact to understand the evidence or determine
a fact in issue.  Tex. R. Evid. 702; Malone
v. State, 163 S.W.3d 785, 792 (Tex. App.––Texarkana 2005, pet. ref’d).

            Here,
we are concerned with the first requirement of Rule 702—the qualification of
the witness as an expert.  Black’s
qualifications as an expert in this instance are admittedly thin.  We are only told that Black was experienced
in conducting field tests for controlled substances and that he conducted such
tests on numerous occasions in the past. 
In Smith, the officer
conducted a field test of a substance found near the appellant, and the test
indicated positive for cocaine.  A
subsequent chemical analysis revealed the substance to be cocaine.  Smith,
874 S.W.2d at 721.  While the officer in
that case was permitted to testify about the procedure he used in performing
the field test, his conclusion as to the results of the field test was accorded
no probative value.  Id. at 722; see also Duran v. State, 552 S.W.2d 840, 843
(Tex. Crim. App. 1977) (experienced narcotics officer not qualified to testify
that brown powdered substance was heroin). 
In this case, we are told that Black had conducted numerous field tests
for controlled substances in the past. 
While such testimony might qualify Black to testify regarding the
procedure used to perform the field test, it does not necessarily qualify him to
testify as to the identity of the substance tested.  

            Kessler
also complains that the trial court erred in allowing Black to testify that in
his opinion, methamphetamine was present on the objects possessed by
Kessler.  The objection to this testimony
was likewise based on the premise that Black was not qualified as an expert to
provide such testimony.  The argument and
authority presented in support of this point of error is essentially identical
to that presented in support of Kessler’s first point of error—that Black was
not qualified as an expert witness. 
Accordingly, we apply the same reasoning and analysis to each point of
error.

            B.        Any
Error in the Admission of Black’s Testimony Was Harmless

            Although
the trial court erred in the admission of Black’s testimony regarding field
test results and Black’s opinion that the drug paraphernalia in Kessler’s
possession contained methamphetamine, we determine that any such error was
harmless.  A violation of an evidentiary
rule that results in the erroneous admission of evidence is not constitutional
error.  Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).  When a nonconstitutional error is made during
trial, it will be disregarded as harmless if the error did not affect the
substantial rights of the defendant.  Tex. R. App. P. 44.2(b); King v. State, 953 S.W.2d 266, 271 (Tex.
Crim. App. 1997).  A substantial right is
implicated when the error had a substantial and injurious effect or influence
in determining the jury’s verdict.  King, 953 S.W.2d at 271.  In addition to the disputed testimony offered
by Black, Black further testified, without objection, that Kessler admitted the
substance in question was methamphetamine: 


            Q         [By the State]  Did Mr. Kessler admit to you that these
were–that this was methamphetamine?

 

            A         [By Black]  Yes, I believe he did.

 

            Q         He was asking for a way to work these
charges off?

 

            A         Yes, sir.

 

            At
the conclusion of the hearing, the trial court relied on Kessler’s admission as
reflected in the foregoing testimony in finding Kessler was in violation of the
terms and conditions of his community supervision:  “the defendant, in the testimony of the
officer who testified, made an admission in the presence of the officers as to
the use of methamphetamine, and that in turn adds to the credibility of the
statement that he made of working off this charge as an informer.”  

            Black
further testified, without objection, that Kessler was charged with the
possession of drug paraphernalia (the rolled tinfoil and ink pen tube) because “[d]rug
paraphernalia in Oklahoma is the use of any object to produce any narcotic in
the human body.  That would be the
aluminum foil and the . . . tube of the pen.”[5]  The trial court specifically found that
Kessler was in possession of drug paraphernalia in violation of Oklahoma law
and in violation of the terms and conditions of his community supervision.[6]  

            The
determination of an adjudication of guilt is reviewable in the same manner used
to determine whether sufficient evidence supported the trial court’s decision
to revoke community supervision.  See Tex.
Code Crim. Proc. Ann. art. 42.12, § 5(b) (Vernon Supp. 2010).  While the decision to revoke community
supervision rests within the discretion of the trial court, it is not
absolute.  In re T.R.S., 115 S.W.3d 318, 320 (Tex. App.—Texarkana 2003, no
pet.).  To revoke community supervision,
the State must prove every element of at least one ground for revocation by a
preponderance of the evidence.  Tex. Code Crim. Proc. Ann. art. 42.12,
§ 10 (Vernon Supp. 2009); T.R.S., 115
S.W.3d at 320; Johnson v. State, 943
S.W.2d 83, 85 (Tex. App.—Houston [1st Dist.] 1997, no pet.).  “‘Preponderance of the evidence’ has been
defined as the greater weight and degree of credible testimony.”  T.R.S.,
115 S.W.3d at 320.  In other words, if
the greater weight of credible evidence in this case created a reasonable
belief that Kessler violated a condition of community supervision, the standard
was met.  Id. at 321 (citing Martin v.
State, 623 S.W.2d 391, 393 n.5 (Tex. Crim. App. [Panel Op.] 1981)).  

            Based
on (1) Kessler’s admission via Black’s testimony and (2) Black’s testimony that
Kessler was in possession of drug paraphernalia, the greater weight of the
credible evidence created a reasonable belief that Kessler violated at least
one condition of his community supervision by a preponderance of the
evidence.  Therefore, even if the trial
court erred in admitting Black’s testimony regarding the field test results and
Black’s opinion testimony that the substance in question was methamphetamine,
such error is harmless in light of the fact that there is other, credible
evidence to support the revocation of Kessler’s community supervision and
subsequent adjudication of guilt.  Any
error in the admission of the disputed testimony did not affect Kessler’s
substantial rights and must therefore be disregarded.  See
Tex. R. App. P. 44.2(b).  

III.       CONCLUSION

            We affirm the judgment of the trial
court.

 

 

                                                                                    Bailey
C. Moseley

                                                                                    Justice

 

Date Submitted:          January 27, 2011

Date Decided:             January 28, 2011

 

Do Not Publish











[1]Tex. Health & Safety Code Ann. §
481.115 (Vernon 2010).





[2]Kessler
pled “not true” to both allegations.





[3]The testimony regarding field testing and the ruling
of the trial court on that testimony is as follows:

 

                A             [By
Black]  I asked Mr. Kessler if there was
anything else in his vehicle, and he stated no. 
At that time I placed Mr. Kessler under arrest. 

 

                Q             [By
the State]  What for?  

 

                A             For
possession of methamphetamine and drug paraphernalia.  The objects were field-tested and received a
positive . . . 

 

                                [DEFENSE COUNSEL]:  Your Honor, we would object to any testimony
about field test results unless this witness is qualified as an expert. 

 

                                THE COURT:  Qualify him on field test.

 

                Q             Are
you familiar with field-testing substances for controlled substances?

 

                A             Yes.

 

                Q             And
have you done that on many or numerous–numerous or few occasions?

 

                A             Numerous.

 

                Q             And
do you feel that when you did it, it was accurate–what you were doing?

 

                A             Yes,
sir.

 

                                [DEFENSE COUNSEL]:  Your Honor, we’ll object to any testimony as
to accuracy.  Unless he can be shown to
be some kind of a chemist or qualified to administer drug tests or test drugs,
I don’t think he can testify to any kind of results.

 

                                THE COURT:  Overruled.

 





[4]The
State takes the position that testimony concerning a narcotics field test is
not scientific evidence, and therefore, Black’s testimony regarding the results
of the field test was admissible.  In
support of this position, the State relies on Wilson v. State, 854 S.W.2d 270, 276 (Tex. App.––Amarillo 1993,
pet. ref’d) (field test for cocaine not “novel scientific evidence”).  We note that the standard for determining
admissibility of scientific evidence, set forth in Kelly v. State, 824 S.W.2d 568 (Tex. Crim. App. 1992), is not
limited to novel scientific evidence but, rather, applies to all scientific
evidence.  Hartman v. State, 946 S.W.2d 60 (Tex. Crim. App. 1997).  Moreover, “testimony concerning the field
test” in Wilson was merely offered to
establish the chain of custody of the substance; the State later offered
evidence of the scientific test run on the substance by a chemist.  Wilson,
854 S.W.2d at 276.  Here, the State did
not offer the testimony of a chemist to prove the identity of the substance
found on the tinfoil and ink pen tube. 
The trial court sustained Kessler’s objection to the admissibility of
laboratory test results.  





[5]The
trial court took judicial notice of the laws of the State of Oklahoma, as they
relate to the possession of a controlled substance as well as to the possession
of drug paraphernalia.  The applicable
criminal statutes provide, in pertinent part:

A. 1.  It shall
be unlawful for any person knowingly or intentionally to possess a controlled
dangerous substance unless such substance was obtained directly, or pursuant to
a valid prescription or order from a practitioner, while acting in the course
of his professional practice, or except as otherwise authorized by this act.

 

63 Okla. Stat.
Ann. § 2-402 (West 2010).

 

B.  No person shall use drug paraphernalia to
plant, propagate, cultivate, grow, harvest, manufacture, compound, convert,
produce, process, prepare, test, analyze, pack, repack, store, contain,
conceal, inject, ingest, inhale or otherwise introduce into the human body a
controlled dangerous substance in violation of the Uniform Controlled Dangerous
Substances Act, except those persons holding an unrevoked license in the
professions of podiatry, dentistry, medicine, nursing, optometry, osteopathy,
veterinary medicine or pharmacy.

 

C. No person shall deliver,
sell, possess or manufacture drug paraphernalia knowing, or under circumstances
where one reasonably should know, that it will be used to plant, propagate,
cultivate, grow, harvest, manufacture, compound, convert, produce, process,
prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest,
inhale or otherwise introduce into the human body a controlled dangerous
substance in violation of the Uniform Controlled Dangerous Substances Act.

 

63 Okla. Stat.
Ann. § 2-405 (West 2010).

 





[6]Kessler’s
sole challenge on appeal is directed toward Black’s testimony regarding the
results of the field test and his opinion that the substance in question was
methamphetamine.  Kessler does not
challenge the trial court’s finding that he “was in possession of drug
paraphernalia and that is a violation of Oklahoma law.”  This is likewise a violation of the terms and
conditions of Kessler’s community supervision, which provide that “Defendant
shall commit no offense against the laws of this or any State or of the United
States or any other Country.”