

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00089-CR

_____

COREY THOMAS WILLIAMS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 264th District Court
Bell County, Texas
Trial Court No. 72868

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

## MEMORANDUM OPINION

Corey Thomas Williams was convicted by a Bell County[1] jury of capital murder[2] and sentenced to life imprisonment. During its case-in-chief, the State presented Serena Zboril, a forensic analyst from the Texas Department of Public Safety (DPS), to testify about the presence of DNA on several evidentiary items. In his sole point of error on appeal, Williams complains that the trial court erred in admitting Zboril's reports into evidence. We affirm the trial court's judgment.

## I. Facts of the Crime and Investigation

The State alleged that Williams committed capital murder by murdering Mazhar Aslam during the course of robbing Pool's Quick Mart in Temple, Texas, on April 2, 2014. At trial, the State demonstrated how its investigation led to Williams' arrest and how the evidence discovered after his arrest linked him to Aslam's murder.

A surveillance video recording from the Pool's Quick Mart robbery depicted a man jumping on the counter with a pistol in his hand and wrestling with two store employees before shooting them. The recording then shows the man taking some items and quickly leaving the store. Police detectives posted still photographs taken from the recording on Facebook and asked for the public's assistance in identifying the man depicted in the photographs.

---

[1] Originally appealed to the Third Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Third Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2] *See* TEX. PENAL CODE ANN. § 19.03 (West Supp. 2018). The State did not seek the death penalty. *See* TEX. PENAL CODE ANN. § 12.31 (West Supp. 2018).

2

An employee of the Family Dollar Store in Temple saw the photos and called police. She told them she believed she had waited on the man in the recording earlier that day. Detectives then viewed a surveillance video recording from the Family Dollar Store which depicted two men shopping for gloves. Police identified the men in the Family Dollar Store recording as John Page, Jr., and Williams. Police began to focus their investigation on these two men. Page was contacted and questioned about the robbery. The detectives ultimately located Williams at Lamar University in Beaumont.

Ambreia Barnes testified that Williams appeared at her Lamar University dormitory room early in the morning on April 3, 2014. She testified that she had dated Williams in high school, but had not seen him in nearly a year. She allowed Williams to sleep on her couch. She later helped him return his rental car. At the rental car return, Williams transferred his clothes and other belongings to Barnes' car, and they then returned to the dormitory room. Barnes noticed that Williams had a lot of money with him. She testified that Williams put the money in one of her hats and then stored it in her dormitory room refrigerator.

Texas Ranger Robert Smith arrested Williams at Lamar University. He obtained Barnes' consent to search her car and dormitory room. During the course of those searches, Ranger Smith located the money in Barnes' refrigerator. The money appeared to have blood on it. He also found Williams' clothes in the trunk of Barnes' car. Among those clothes was the shirt worn by the man identified as Williams in the Family Dollar store video recording. Ranger Smith also found a pistol in Williams' luggage, which also contained Williams' social security card. He turned all of the items over to Detective Powell later that day.

The State called DPS Crime Laboratory Ballistics Expert Mallory Foster, who testified that the gun recovered from Williams' luggage was the same gun used during the Pool's Quick Mart robbery. Also, Candice Freeman, a woman who had known Williams most of his life, identified him as one of the men in the still photographs taken from the Family Dollar recording.

The State then called Zboril. Zboril testified that she analyzed and compared DNA profiles from Williams, Page, Aslam, the other Pool's employee that was shot, and other suspects named by the police against various items of evidence provided to her as part of this case. According to Zboril, DNA from the blood-stained money recovered from Barnes' dormitory room was statistically consistent with Aslam's DNA profile.

Zboril also testified that DNA profiles from the gun found in Williams' luggage were consistent with Aslam's and Williams' DNA profiles. In addition, she testified that she found Williams' DNA on a shirt recovered from Barnes' car and that the shirt contained Aslam's DNA blood profile as well. Finally, she excluded Page and the other Pool's Quick Mart clerk, Mohammed Khan, as contributors to the DNA profiles found on the shirt. Zboril testified that all of her opinions were based on a reasonable degree of scientific certainty. Near the close of her testimony, and over Williams' objection, the trial court admitted Zboril's summarized written reports into evidence.

The jury found Williams guilty, and the trial court assessed an automatic sentence of imprisonment for life. Williams then filed this appeal

## II. Analysis

### A. Williams' Argument

Williams complains on appeal that the trial court erred in admitting Zboril's reports. At trial, Williams objected to Zboril's reports as being hearsay. The State answered that the documents were admissible under the business records exception to the hearsay rule. *See* TEX. R. EVID. 803(6).[3] In response, Williams argued that, because the records were not admissible as reports generated by a law enforcement person under Rule 803(8),[4] they could not be admitted as business records under Rule 803(6). Williams relies on the Texas Court of Criminal Appeals' opinion *Cole v. State* in support of his argument. *See Cole v. State*, 839 S.W.2d 798, 800 (Tex. Crim. App. 1990) (op. on reh'g).

In *Cole,* the appellant challenged the admission of a DPS chemist's report in his sexual assault prosecution. *Id*. at 800. As in this case, the trial court had admitted the chemist's report

---

[3]Under Rule 803(6) of the Texas Rules of Evidence, the following records are not excluded as hearsay, regardless of the declarant's availability:

> (6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if: (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted business activity; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by affidavit or unsworn declaration that complies with Rule 902(10); and (E) the opponent fails to demonstrate that the source of the information or the method of circumstances of preparation indicate a lack of trustworthiness. "Business" as used in this paragraph includes every kind of regular organized activity whether conducted by profit or not.

TEX. R. EVID. 803(6).

[4]Under Rule 803(8) of the Texas Rules of Evidence, the following records are not excluded as hearsay, regardless of the declarant's availability:

> (8) Public Records. A record or statement of a public office if: (A) it sets out" (i) the officer's activities; (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; . . . and (B) the opponent fails to demonstrate that the source of information or other circumstances indicate a lack of trustworthiness.

TEX. R. EVID. 803(8).

under the business record exception to the hearsay rule found in Rule 803(6). *Id*. Cole argued that, because the record was not admissible as a public records under Rule 803(8), the State could not admit the report as a business record under Rule 803(6). *Id*. The Court of Criminal Appeals agreed. *Id*. at 806.

The Court of Criminal Appeals first concluded that DPS reports were not admissible under Rule 803(8) because the DPS chemists were "law enforcement personnel," and Rule 803(8)(a)(ii) specifically excludes reports by law enforcement personnel from the public records exception contained in that rule. *Id*. at 810. The Court of Criminal Appeals then concluded that evidence barred by Rule 803(8) cannot be admitted as a business record under Rule 803(6), because to do so would allow the State "to . . . use . . . Rule 803(6) as a 'back door' to evidence inadmissible under Rule 803(8)." *Cole*, 839 S.W.2d at 811.

**B.     The State's First Argument:  Williams Waived His Point of Errorb**The State first argues that Williams waived any point of error regarding the introduction of Zboril's reports because he failed to object to her testimony that covered the same information contained in the report. The State cites *Chamberlain v. State*, 998 S.W.2d 230, 235 (Tex. Crim. App. 1999), and *Martin v. State*, No. 03-97-00301-CR, 1998 WL 393991 (Tex. App.—Austin July 16, 1998, no pet.) (not designated for publication), in support of their argument.

In *Chamberlain*, the Court of Criminal Appeals held that any error by the trial court in admitting the defendant's work telephone records was harmless "because the same information contained in the records was admitted through the un-objected to testimony of various witnesses." *Chamberlain*, 998 S.W.2d at 235. In *Martin*, the Austin Court of Appeals held that the appellant's

6

hearsay objection to a testing DPS chemist's report was invalid because "by appellant's objection he has admitted that the same testimony was already in existence.  Under these circumstances, appellant cannot be heard to complain where the evidence has been conveyed to the jury in some other form."  *Martin*, 1998 WL 393991, at *1.

However, after *Martin* and *Chamberlain* were decided, the Court of Criminal Appeals decided *Matz v. State*, 14 S.W.3d 746 (Tex. Crim. App. 2000).  In *Matz*, the child victim testified in Matz' trial for aggravated sexual assault of a child.  *Id*.  After the child testified, "the trial court admitted into evidence a videotape interview with [the victim] which Child Protective Services (CPS) had filmed before trial," over Matz's hearsay objection.  *Id*.  The court of appeals held that Matz had waived his hearsay objection to the videotaped interview "because the videotaped interview essentially repeated [the victim's] live testimony, and because appellant never objected to [the victim's] testimony about the abuse. . . ."  *Id*. at 746–47.  The Court of Criminal Appeals reversed the court of appeals' decision, holding,

> The Court of Appeals misunderstood the basis for appellant's complaint about admission of the videotaped testimony.  Appellant did not object to the *substance* of that testimony, but to the *form*, i.e., that it was hearsay. . . .  The gravamen for the general exclusion of hearsay is that such testimony is not subject to testing through cross-examination.  Appellant could hardly be expected to object to [the victim's] live testimony on this same basis, since that testimony was, by definition, not hearsay.  Furthermore, the precedents cited by the Court of Appeals in support of its holding are distinguishable.  In all of those cases, the defendant had objected to the *substance* of admitted testimony, and error was held waived because the same *substantive* testimony was elsewhere admitted without objection.  We find that the Court of Appeals erred in holding that appellant failed to preserve error as to the admission of the complainant's videotaped testimony because he did not object to live testimony by the complainant.

*Id*. at 747.

Although the present case was transferred to this Court from the Austin Court of Appeals, and although we are bound to follow the precedent of the transferring court, *See* TEX. R. APP. P. 41.3,[5] *Martin* is an unpublished opinion, and unpublished opinions have no precedential value. *See* TEX. R. APP. P. 47.7.[6] Moreover, *Matz* is a Court of Criminal Appeals decision and was decided after *Martin*. Therefore, *Matz* controls this case, and under that authority, we find that Williams did not waive his point of error.

**B.    The State's Second Argument:  *Cole v. State* Does Not Apply to this Case Because Zboril Testified Live**

The State next points to the Amarillo Court of Appeals decision *Williams v. State* and argues that *Cole* has "never been applied in this state where the report complained of was made by an expert witness who was present and who testified to the matters contained in the report at trial." *Wilson v. State*, 854 S.W.2d 270, 276–77 (Tex. App.—Amarillo 1993, pet. ref'd). In *Wilson*, the State offered the reports of a testifying DPS chemist. *Id*. at 276. Defendant objected to the trial court that the report impermissibly bolstered the witness' testimony, but on appeal, he argued that

---

[5]Rule 41.3 of the Texas Rules of Appellate Procedure provides,
> Precedent in Transferred Cases. In cases transferred by the Supreme Court from one court of appeals to another, the court of appeals to which the case is transferred must decide the case in accordance with the precedent of the transferor court under principles of stare decides if the transferee court's decision otherwise would have been inconsistent with the precedent of the transferor court.

TEX. R. APP. P. 41.3.

[6]Rule 47.7(a) of the Texas Rules of Appellate Procedure provides,
> Opinions and memorandum opinions not designated for publication by the court of appeals under these or  prior rules have no precedential value but may be cited with the notation, "not designated for publication."

TEX. R. APP. P. 47.7(a).

the report was inadmissible under *Cole*. *Id*. The Amarillo Court of Appeals held that the trial

objection did not comport with the appellate point and was therefore waived, but it also stated,

> We first note we do not agree with appellant that *Cole v. State* prohibits the
> introduction of laboratory reports. We do not read *Cole* or Rule 803 to preclude
> from evidence the laboratory report or notes of the chemist, when the testifying
> chemist actually performed the tests. Such evidence in our opinion is neither
> impermissible bolstering or impermissible hearsay.

*Id*. at 277.

We have found no authority from the Austin Court of Appeals or from this court addressing

the issue raised in *Wilson*, and both the State's and Williams' positions on this issue are plausible.

On the one hand, under the language from *Wilson* cited above, *Cole* would not apply, and *Wilson*

is a case involving DPS reports such as is the case here. On the other hand, the language from

*Wilson* relied upon by the State is dicta, and in *Cole*, the Texas Court of Criminal Appeals said

that DPS chemists are law enforcement officers. Rule 803(8)(a)(ii) specifically excludes reports

from law enforcement officers, and it makes no distinction between reports of law enforcement

officers who testify and those who do not. Therefore, under a strict reading of the Rule, *Cole*

would apply to this case.

Nevertheless, we need not decide this question, because even if we assume without

deciding that *Cole* is applicable to this case, we find that any trial court error in admitting Zboril's

reports was harmless. Error arising from the improper admission of evidence is non-constitutional

error. *Warr v. State*, 418 S.W.3d 617, 621 (Tex. App.—Texarkana 2009, no pet.) (citing *King v.

State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)); *see also Sandoval v. State*, 409 S.W.3d 259,

287 (Tex. App.—Austin 2013, no pet.). "We will not overturn a criminal conviction for non-

9

constitutional error if, after examining the record as a whole, we have fair assurance the error did not influence the jury, or influenced the jury only slightly." *Sandoval*, 409 S.W.3d at 287 (citing *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011)); s*ee also* TEX. R. APP. P. 44.2(b). For the reasons stated below—and assuming without deciding that the trial court erred in admitting Zboril's reports—we find that Williams' substantial rights were not affected.

First, several damning pieces of information contained in the reports were admitted through Zboril's live testimony and were properly before the jury. Specifically, Zboril testified that Williams' and Aslam's DNA was found (1) on one of the five-dollar bills that Williams had with him when he was arrested in Beaumont, (2) on a shirt found in Barnes' car, and (3) on the pistol found in Williams' possessions when he was arrested. In addition, the surveillance recordings from both stores was clear enough to give the jury ample opportunity to decide whether Williams was the man depicted in the recordings. Both recordings provide multiple camera angles and relatively clear color images. The Pool's Quick Mart recording shows the assailant from several angles. He can be seen entering and leaving the store, approaching the counter, jumping on the counter, wrestling with two employees, shooting those employees, and finally gathering money from the floor behind the clerk's counter. Likewise, the Family Dollar Store recording is of good quality, and a man strongly resembling the Pool's Quick Mart attacker can be clearly seen for several seconds.

Moreover, Candice Freeman, a woman who had known Williams most of his life, testified that Williams was the man depicted in still photos taken from the two surveillance recordings. Ms. Freeman also testified that Williams was at her house the night of the Pool's Quick Mart robbery

10

and that the black shirt and pants worn by the assailant in the recordings resembled the clothes Williams was wearing at her house that night. Furthermore, three bullet fragments found at Pool's Quick Mart, and one from Aslam's body, were matched to the pistol found in Williams' bag by the State's ballistics expert. Finally, the bag where Ranger Smith found the pistol also contained Williams' social security card.

## III. Conclusion

Given the other, overwhelming evidence connecting Williams to the murder in question, we find that there was no harm in the trial court's admission of Zboril's reports. Therefore, we overrule Williams' sole point of error.

We affirm the trial court's judgment.


Ralph K. Burgess
Justice


Date Submitted:     September 28, 2018
Date Decided:       November 1, 2018

Do Not Publish

11